**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IJKG, LLC; IJKG PROPCO LLC and IJKG OPCO LLC d/b/a CAREPOINT HEALTH - BAYONNE MEDICAL CENTER, HUDSON HOSPITAL OPCO LLC d/b/a CAREPOINT HEALTH - CHRIST HOSPITAL, and HUMC OPCO LLC d/b/a CAREPOINT HEALTH - HOBOKEN UNIVERSITY MEDICAL CENTER, | Civil Action No. 16-8637 (CCC)(MF) |
| Plaintiffs, | |
| vs. | **Motion Returnable: July 3, 2017** |
| UNITED HEALTHCARE SERVICES, INC., OPTUMINSIGHT, INC., and UNITEDHEALTH GROUP, INC., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT, WITH PREJUDICE**

---

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, NJ 07962-1991
(973) 292-1700

Michelle S. Grant
Shannon L. Bjorklund
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
(612) 340-2600

*Attorneys for Defendants United Healthcare Services, Inc.,
OptumInsight, Inc., and UnitedHealth Group, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................ 1

FACTUAL ALLEGATIONS IN THE COMPLAINT ...................................... 2

  I.  The Provider Dispute Process and the ERISA Appeal Process .......................... 4

  II.  United's Audits of CarePoint's Charges .................................................. 6

ARGUMENT ................................................................................................. 7

  I.  CAREPOINT LACKS STANDING TO BRING CLAIMS BASED
      ON ANY RIGHTS OF THE PARTICIPANTS
      (COUNTS I-VI, IX & XI) ....................................................................... 8

    A.  The Assignment Clauses Quoted by CarePoint Do Not Validly
        Assign Any Claims ....................................................................... 9

    B.  CarePoint Lacks Standing for Claims Brought on Behalf of
        Patients 1 and 2 (and Any Other Similarly Situated Patients) Because
        the Assignments Are Barred by the Anti-Assignment Clauses ..................... 11

  II.  CAREPOINT FAILS TO STATE A CLAIM FOR RELIEF
      UNDER ERISA (COUNTS I-III) ......................................................... 14

    A.  CarePoint Failed to Exhaust Available ERISA Remedies ....................... 14

    B.  CarePoint's ERISA § 502(a)(1)(B) Claim for Benefits Fails (Count I) ...... 17

      1.  CarePoint Does Not Adequately Allege Any Services
         Covered by the Applicable Plans ................................................. 17

      2.  CarePoint Does Not Identify Any Plan Requiring Benefits
         Be Paid According to CarePoint's Billed Charges or that Any
         Benefits Are Due in Addition to What Has Already Been Paid ................. 20

    C.  CarePoint's ERISA Breach of Fiduciary Duty Claim Fails (Count II) ........ 22

    D.  CarePoint's ERISA § 503 Claim to Enforce the Review Process
        Fails Because United Is Not a Proper Defendant (Count III) ..................... 27

i

III. CAREPOINT'S REMAINING CLAIMS FAIL TO STATE A
     CLAIM FOR RELIEF (COUNTS IV-XI) ................................................28

  A.  CarePoint's State Law Claims Are Preempted (Counts IV-XI).....................28

  B.  CarePoint's Remaining Counts Fail to State a Claim for Relief....................30

    1.  CarePoint inadequately pleads Count IV. ..........................................31

    2.  CarePoint inadequately pleads Count V. ...........................................31

    3.  CarePoint inadequately pleads Count VI. ..........................................31

    4.  CarePoint inadequately pleads Count VII.........................................33

    5.  CarePoint inadequately pleads Count VIII........................................34

    6.  CarePoint inadequately pleads Count IX. ..........................................35

    7.  CarePoint inadequately pleads Count X. ...........................................36

    8.  CarePoint inadequately pleads Count XI. ..........................................39

CONCLUSION....................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Advanced Orthopedics & Sports v. BCBS of Mass.*,
    2015 U.S. Dist. LEXIS 93855 (D.N.J. July 20, 2015) ..........................11, 12, 13

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).........................................................................................29

*Aetna Health, Inc. v. Srinivasan*,
    2016 N.J. Super. Unpub. LEXIS 1515 (App. Civ. June 29, 2016) ...................37

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994) ..............................................................................21

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    99 F. Supp. 3d 1110 (C.D. Cal. 2015) .............................................................10

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*,
    625 F. App'x 169 (3d Cir. 2015) ......................................................................14

*Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., Inc.*,
    2008 WL 8872492 (D.N.J. Feb. 21, 2008) .......................................................26

*Aralac, Inc. v. Hat Corp. of Am.*,
    166 F.2d 286 (3d Cir. 1948) .............................................................................36

*Ark. BCBS v. St. Mary's Hosp., Inc.*,
    947 F.2d 1341 (8th Cir. 1991) ..........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................14, 33

*In re Azek Bldg. Prods. Mktg & Sales Practices Litig.*,
    82 F. Supp. 3d 608 (D.N.J. 2015)....................................................................36

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007)....................................................................................18, 32

*Black United Fund of N.J., Inc. v. Kean*,
    763 F.2d 156 (3d Cir. 1985) .............................................................................36

*Boeckman v. A.G. Edwards, Inc.*,
   461 F. Supp. 2d 801 (S.D. Ill. 2006)...................................................................25

*Briglia v. Horizon Healthcare Servs.*,
   2005 U.S. Dist. LEXIS 18708 (D.N.J. May 13, 2005)........................................12

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
   2012 WL 762498 (D.N.J. Mar. 6, 2012) ...........................................17, 19, 30, 33

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ...............................................................................5

*Caione v. Navient Corp.*,
   2016 WL 4432687 (D.N.J. Aug. 18, 2016) .........................................................21

*City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*,
   156 F.3d 223 (1st Cir. 1998)................................................................................11

*Coburn v. Evercore Trust Co., N.A.*,
   160 F. Supp. 3d 361 (D.D.C. 2016).....................................................................25

*Cohen v. Horizon BCBS of N.J.*,
   2017 U.S. Dist. LEXIS 23999 (D.N.J. Feb. 21, 2017) ..................................34, 39

*Cohen v. Indep. Blue Cross*,
   820 F. Supp. 2d 594 (D.N.J. 2011)......................................................................12

*Curcio v. John Hancock Mut. Life Ins. Co.*,
   33 F.3d 226 (3d Cir. 1994) ..................................................................................26

*Davidowitz v. Delta Dental Plan of Cal., Inc.*,
   946 F.2d 1476 (9th Cir. 1991) .............................................................................11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003).................................................................25

*In re Estate of Lash*,
   776 A.2d 765 (N.J. 2001) ....................................................................................33

*F.G. v. MacDonell*,
   696 A.2d 697 (N.J. 1997) ....................................................................................32

*Fayetteville Inv'rs v. Commercial Builders, Inc.*,
   936 F.2d 1462 (4th Cir. 1991) ...........................................................21

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins.
   Co.*, 2011 WL 2748724 (N.D. Cal. July 13, 2011)...........................18

*Freund v. Marshall & Ilsley Bank*,
   485 F. Supp. 629 (W.D. Wis. 1979) ..................................................24

*Glauberzon v. Pella Corp.*,
   2011 U.S. Dist. 38138 (D. N.J. Apr. 5, 2011) ..................................37

*Griffin v. Lockheed Martin Corp.*,
   157 F. Supp. 3d 1271 (N.D. Ga. 2015)...............................................23

*Groves v. Modified Ret. Plan of the Johns Manville Corp. & Subs.*,
   803 F.2d 109 (3d Cir. 1986) .............................................................27

*Harrow v. Prudential Ins. Co. of Am.*,
   279 F.3d 244 (3d Cir. 2002) .............................................................14

*Holmes v. Col. Coal. for Homeless Long Term Disability Plan*,
   762 F.3d 1195 (10th Cir. 2014) ........................................................15

*Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*,
   124 F.3d 487 (3d Cir. 1997) .............................................................33

*Interfaith Cmty. Org. v. Honeywell Intern., Inc.*,
   263 F. Supp. 2d 796 (D.N.J. 2003)...................................................37

*In re Jason Realty, L.P.*,
   59 F.3d 423 (3d Cir. 1995) ............................................................9, 39

*Jebian v. Hewlett-Packard Co.*,
   349 F.3d 1098 (9th Cir. 2003) ..........................................................15

*Jordan v. Fed. Express Corp.*,
   116 F.3d 1005 (3d Cir. 1997) ............................................................17

*Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*,
   297 F. App'x 192 (3d Cir. 2008) .......................................................15

*Lockhart v. Holiday Homes of St. John, Inc.*,
 678 F.2d 1176 (3d Cir. 1982) ...........................................................................10

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992).............................................................................................8

*Mallon v. Trover Sols. Inc.*,
 613 F. App'x 142 (3d Cir. 2015) .....................................................................15

*In re Managed Care Litig.*,
 298 F. Supp. 2d 1259 (S.D. Fla. 2003) ...........................................................40

*Menkes v. Prudential Ins. Co. of Am.*,
 762 F.3d 285 (3d Cir. 2014) ............................................................................29

*MHA, LLC v. Aetna Health, Inc.*,
 2013 U.S. Dist. LEXIS 7035 (D.N.J. Feb. 25, 2013) .................................9, 10

*Middlesex Surgery Ctr. v. Horizon*,
 2013 U.S. Dist. LEXIS 27542 (D.N.J. Feb. 28, 2013) ...................................13

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
 163 F.3d 449 (7th Cir. 1998) ...........................................................................21

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*,
 980 F. Supp. 2d 527 (S.D.N.Y. 2013) .............................................................27

*Piscopo v. Pub. Serv. Elec. & Gas Co.*,
 2015 U.S. Dist. LEXIS 82982 (D.N.J. June 25, 2015).....................................28

*Polito v. Cont'l Cas. Co.*,
 689 F.2d 457 (3d Cir. 1982) ............................................................................32

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
 292 F.R.D. 204 (D.N.J. 2013)..........................................................................23

*Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield of N.J.*,
 2016 WL 4499551 (D.N.J. Aug. 25, 2016) .....................................................28

*Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.*,
 323 A.2d 495 (N.J. 1974) ................................................................................32

*Sanctuary Surgical Ctr., Inc. v. UnitedHealth Group Inc*.,
  2013 WL 149356 (S.D. Fla. Jan. 14, 2013)..................................................18, 19

*Scivoletti v. JP Morgan Chase Bank, N.A*.,
  2010 WL 2652527 (D.N.J. June 25, 2010)......................................................31

*Shah v. Shah*,
  2013 WL 5793445 (D.N.J. Oct. 28, 2013) ..................................................35, 36

*Shaw v. Delta Air Lines*,
  463 U.S. 85 (1983)..................................................................................29

*St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Ks., Inc.*,
  49 F.3d 1460 (10th Cir. 1995) ....................................................................13

*Stuhlreyer v. Armco, Inc.*,
  12 F.3d 75 (6th Cir. 1993) ..........................................................................27

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ........................................................................40

*Tango Transp. v. Healthcare Fin. Servs. LLC*,
  322 F.3d 888 (5th Cir. 2003) .........................................................................8

*Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*,
  105 F.3d 210 (5th Cir. 1997) ..................................................................23, 24

*United States v. Mason Tenders Dist. Council of Greater N.Y.*,
  909 F. Supp. 882 (S.D.N.Y. 1995) ...............................................................25

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (3d Cir. 2008) ........................................................................10

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys*.,
  2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ......................................29

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
  93 F.3d 397 (7th Cir. 1996) ........................................................................27

*Williams v. CitiMortgage, Inc*.,
  498 F. App'x 532 (6th Cir. 2012) ..................................................................21

*Zarrilli v. John Hancock Life Ins. Co.*,
    231 F. App'x 122 (3d Cir. 2007) ........................................................34

**Statutes**

28 U.S.C. § 1367(a) ........................................................30

28 U.S.C. § 2201 ........................................................36

29 U.S.C. § 1132, ERISA § 502 ........................................................8, 17

29 U.S.C. § 1133, ERISA § 503 ........................................................15, 27, 28

29 U.S.C. § 1144(a) ........................................................29

ERISA 3(16) ........................................................26

ERISA § 514 ........................................................14

N.J.S.A. §17:48E-1(e) ........................................................30

N.J.S.A. § 17:48E-10.1(d)(1) ........................................................30

N.J.S.A. § 26:2S-6.1(c) ........................................................13

N.J.S.A. § 56:8-19 ........................................................40

**Other Authorities**

29 C.F.R. § 2560.503-1 ........................................................5, 28

Fed. R. Civ. P. 8(a) ........................................................30

Fed. R. Civ. P. 9 ........................................................40

Fed. R. Civ. P. 12 ........................................................8, 12, 14

N.J.A.C. § 11:24-1.1 ........................................................38

N.J.A.C. § 11:24-1.2 ........................................................38

N.J.A.C. § 11:24-9.1(d)(9) ........................................................38

N.J.A.C. § 11:24A-2.5 ........................................................30

N.J.A.C. § 13:35-6.11(b) .........................................................................38

**INTRODUCTION**

In their Amended Complaint, the for-profit CarePoint hospitals seek to recover excessive healthcare fees from United without any basis in law or in the terms of any healthcare benefits plan.[1] Across the country, insurers and government payors analyze hospital bills to identify inappropriate coding or excessive fees, in what a recent New York Times Magazine article described as "an endless war over which medical procedures were undertaken and how much to pay for them":

> The insurance companies and government seem to be always one step behind the latest guerrilla tactics of providers' coders. For years, creative coding has been winning over what the government calls "correct coding," meaning coding that gives providers their due, but without exaggeration.[2]

This lawsuit involves one such dispute over appropriate charges. CarePoint's hospitals are often cited as having some of the highest charge-to-cost ratios in the nation. Indeed, Plaintiff BMC has the dubious distinction of ranking second nationally in a Johns Hopkins list of hospitals with the highest mark-ups over actual costs.[3] While average providers charge 3-4 times Medicare rates, hospitals

---

[1]   "United" refers to all Defendants, and "CarePoint" refers to all Plaintiffs. Exhibits to the Amended Complaint are referred to as "Ex."

[2]   Elisabeth Rosenthal, *Those Indecipherable Medical Bills? They're One Reason Health Care Costs So Much*, N.Y. Times Mag. (Mar. 29, 2017).

[3]   News Release, Johns Hopkins, *Some Hospitals Marking Up Prices More Than 1,000 Percent* (June 8, 2015), https://goo.gl/vM9US3; *see also* Press Release, Nat'l Nurses United, *New Data—Some Hospitals Set Charges at 10 Times their Costs*

on this list charge ten times the Medicare rates. By contrast, BMC charges rates of "12.6 times the actual cost of patient care," according to the Washington Post.[4]

Here, CarePoint makes the remarkable claim that the level of insurance benefits for a service is determined not by the terms of the ERISA plan, but instead by CarePoint itself based on whatever it decides to charge. But tellingly, CarePoint cites no law and no term of any plan mandating this. And CarePoint must know this assertion is incorrect— the terms of the plans it attaches to its Amended Complaint contradict its claims. CarePoint does not and cannot adequately plead that it is entitled to any payments above what it has already received. In addition, CarePoint's failure to exhaust administrative remedies forecloses its ability to seek redress in court. CarePoint's Amended Complaint should be dismissed because CarePoint lacks standing and its claims are inadequately pleaded, facially invalid, and plainly contradicted by its own pleadings and exhibits.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

CarePoint runs a trio of hospitals located in Bayonne, Hoboken, and Jersey City, New Jersey. (Am. Compl. ¶¶ 17–19.) CarePoint claims to have treated

---

(Jan. 6, 2014), https://goo.gl/lT72FD (BMC 6th most expensive U.S. hospital with 1084% charge-to-cost ratio); Jeffrey Young, *Hospital Prices No Longer Secret As New Data Reveals Bewildering System, Staggering Cost Differences*, Huffington Post (May 8, 2013), https://goo.gl/DfmXq8 (BMC charges $99,690  while another provider "[l]ess than 30 miles away . . . charges only $7,044").

[4]   Lena H. Sun, *50 Hospitals Charge Uninsured More Than 10 Times Cost of Care, Study Finds*, Wash. Post (June 8, 2015), https://goo.gl/F4Bvla.

thousands of patients whose healthcare plans are insured by United and/or that have healthcare plans for which United is the claims administrator. (*Id*. ¶ 35.) CarePoint treats these patients on an out-of-network basis, meaning that CarePoint does not have a preexisting contract with United concerning reimbursement for medical services. (*See id*.) One United plan referenced in and attached to the Amended Complaint explains the basic difference between in-network and out-of-network providers for most types of medical claims as follows:

> If you use a network provider, the provider has negotiated rates with the network and offers those reduced rates to participants in the network. . . . You may seek care from out-of-network providers, but in general you will have higher deductibles and out-of-pocket costs, and…[y]ou are [] responsible for any provider charges that exceed the reasonable and customary charges, which are generally determined by the medical claims administrator [United].[5]

CarePoint alleges that it provided services to four United subscribers: Patients 1 and 2, who were allegedly treated for unspecified "medically necessary emergent services"; Patient 3, who allegedly "received medically necessary elective treatment" of some unspecified kind; and an unidentified patient who "required emergent gallbladder surgery" and allegedly received "emergency medical services" over a 9-day period.  (Am. Compl. ¶¶ 68, 85-86 & 10.)

---

[5]   Ex. P at 9. Emergency services performed by a non-network provider may be covered at the same rate as in-network services. *See, e.g.*, Ex. E at 7 ("Emergency Health Services are always paid as Network Benefits."); *id.* at 16 (Emergency Health Services from both in-network and non-network providers are covered at 80% "of Eligible Expenses" after a $150 Copay).

CarePoint disputes the amount it has been paid for 423 claims, including for these four patients, claiming that it is entitled to payment based on the full amount it billed for the services, regardless of the terms of the plans.

## I.      The Provider Dispute Process and the ERISA Appeal Process

United processes these claims and disburses the amount to which the patient is entitled under the terms of his or her plan. (*See id*. ¶ 62.) United uses automated systems to timely process the massive volume of submitted claims (often against the backdrop of state "prompt pay" laws similar to the one CarePoint cites). (*See id.* ¶ 42.) To identify and correct overpayments that necessarily happen as a result of automation (due to reasons ranging from provider billing errors to erroneous coordination with other benefits plans to fraud and abuse), United regularly audits and validates paid claims. (*See id*. ¶ 63.) United initiates the provider repayment process when appropriate, in this instance, allegedly for 423 claims of the "thousands of United Subscribers" that CarePoint has treated. (*See id.* ¶¶ 13 & 35.)

There are two steps to this process. First, United and providers communicate about the audit findings. United's auditors notify providers that an audit has identified payments they believe are subject to repayment and provide an itemized list of each service, the amount of adjustment for the overpayment (if any), and the reason for the adjustment. (*See, e.g.*, Ex. F.) Under United's overpayment recovery procedures, providers like CarePoint have between 30 to 365 days (depending on

4

state law) to notify United if they "disagree with [the audit] findings," which will

trigger further review. (*See, e.g.*, Ex. F.) If United receives no communication from

the provider, or if United considers and rejects the provider's arguments, then the

"claims will be reprocessed to reflect the audit findings."  (Ex. F; *see also* Ex. H

(upholding audit findings after considering provider disagreement[6]).)

     The second phase begins once the claim is reprocessed. It is this

reprocessing—which occurs after any provider appeal is resolved—that identifies

the overpaid amount as eligible to be recouped and triggers the patient's notice and

appeal rights under ERISA. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining adverse

benefit determination). United generates and sends "Explanation of Benefits"

(EOB) forms to the member describing any adverse benefit determination (ABD).

(*See* Bjorklund Decl. Ex. 1 (EOB form for Patient 1[7]).) All four plans CarePoint

relies upon describe a two-level internal ERISA appeal process with the possibility

of a third review by an outside party for certain disputes, *all of which must occur

prior to* bringing a lawsuit. (*See* Ex. E at 66-73; Ex. L at 66-72; Ex. O at 189-98;

Ex. P at 141-50.)

---

[6]   While this correspondence sometimes refers to a provider's "appeal" of the
audit findings, this informal provider process is separate from the patient's formal
ERISA appeal of an ABD.

[7]   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)
(holding that "a document *integral to or explicitly relied* upon in the complaint
may be considered" at the motion-to-dismiss phase) (emphasis in original).

## II.     United's Audits of CarePoint's Charges

CarePoint brings suit under ERISA and New Jersey state law with respect to 423 claims totaling nearly $2 million. (Am. Compl. ¶ 13.) "United initially paid the full amount of the 423 claims" (*id.* ¶ 45), using automated systems to timely process the submitted claims, and later audited the claims. (*See id.* ¶ 63.) United's audits identified significant problems with the 423 claims at issue, including numerous instances where CarePoint submitted a "corrected bill" or where CarePoint was paid for "services not rendered." (*See* Ex. C ("Overpayment Reason" column).) United identified additional overpayments resulting from duplicate payments, incorrect coordination with other benefit plans, and issues such as incorrectly calculated interest or Medicare reimbursement rates. (*See id.*)

Although CarePoint argues it was denied notice of these overpayments or a full and fair opportunity to contest them (*see* Am. Compl. ¶ 15), the facts it pleads show the opposite. Indeed, CarePoint admits that it actually received an itemized list of 144 of the claims at issue in October 2015, and a spreadsheet inventorying the balance of 289 claims one month later. (*Id.* ¶¶ 74, 77.) These documents identified each overpaid claim, the relevant patient, the dates of service, and the overpayment amount, as well as the reason the claim was identified as overpaid. (*See* Exs. C & D.) CarePoint also concedes that United sent detailed correspondence about its audit findings. (*See, e.g.*, Am. Compl. ¶¶ 82-86; Exs. F, H

6

& I.) The correspondence included "Audit Findings/ Overpayment Notification" letters detailing each claim's adjusted charges by line item, identifying (by code) the reasons for each line item's adjustment, and furnishing a legend explaining each adjustment code. (*See, e.g.*, Ex. F.) The letters further explain how CarePoint could dispute the audit findings, which is part of a provider-specific process— separate from the patient's ERISA appeal of an adverse benefit determination— that allows providers to correct billing deficiencies and contest payment amounts.[8]

When CarePoint did participate in the provider-dispute process, CarePoint sometimes prevailed. United withdrew ten of its identified overpayments in response to CarePoint's appeals, leaving the 423 claims still at issue. (*See* Am. Compl. ¶ 79.) The ten withdrawn claims totaled $352,096.71—approximately 15% of the initially contested amount. (*Id*.; *see also* Ex. J (inventorying withdrawn overpayment requests).) In sum, CarePoint pleads only that it allegedly initiated provider appeals, prevailed in several of them, but has not pleaded any appeal or exhaustion of ERISA appeal rights.

## <u>ARGUMENT</u>

CarePoint fails to state any claim for relief. First, CarePoint lacks standing to sue as an assignee of the patients (Counts I-VI, IX and XI). Second, CarePoint fails

---

[8]    *See, e.g.*, Ex. F (furnishing address, telephone, and fax number for disputing audit findings); Ex. I (explaining that if provider had already utilized provider appeal form, it could seek arbitration between United and the provider).

to state any ERISA claim (Counts I-III) because it has not adequately pleaded a breach of any plan term, and its other ERISA claims fail to identify a cognizable basis for relief. Third, CarePoint's state law claims (Counts IV-XI) fail because they are preempted as to any claims brought on behalf of members of any ERISA plans and CarePoint fails to identify or allege any non-ERISA plans.

## I.   CAREPOINT LACKS STANDING TO BRING CLAIMS BASED ON ANY RIGHTS OF THE PARTICIPANTS (COUNTS I-VI, IX & XI)

"The party invoking federal jurisdiction bears the burden of establishing [standing]." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Under ERISA, only plan participants, plan beneficiaries, plan fiduciaries, or the Secretary of Labor are "[p]ersons empowered to bring a civil action." *See* 29 U.S.C. § 1132(a); *see also Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003). CarePoint is none of these. CarePoint is a healthcare provider and thus lacks standing to bring ERISA claims in its own right. CarePoint attempts to remedy this by bringing its claims as a purported assignee of its patients' ERISA rights. However, CarePoint fails to adequately plead standing as an assignee.

CarePoint fails to adequately plead that it has received valid assignments generally. Even if such assignments were valid, they are barred by the anti-assignment provisions in the plans for Patients 1 and 2. Without standing, CarePoint's ERISA claims must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

8

## A.  The Assignment Clauses Quoted by CarePoint Do Not Validly Assign Any Claims

CarePoint alleges that United subscribers signed one of two assignment of benefits contracts, but it fails to attach the full language of any such agreement. (Am. Compl. ¶ 50.) Even the language selectively quoted by CarePoint is not sufficient to assign any rights. As a court in this district recognized, "effective assignment[s]" must show "the intent to make an immediate and complete transfer of all right[s] to the assignee." *MHA, LLC v. Aetna Health, Inc.*, 2013 U.S. Dist. LEXIS 7035, at *7 (D.N.J. Feb. 25, 2013). An assignment that does not "clearly reflect[] the assignor's intent to transfer his rights" will not "be effective." *Id*. The language of CarePoint's alleged assignment forms does not "clearly reflect" the patient's "intent to make an immediate and complete transfer." *Id*. The terms pleaded by CarePoint purport to designate CarePoint as both (1) an assignee of all its patients' benefits and (2) as an authorized representative of its patients with respect to those same benefits at the very same time. (Am. Compl. ¶¶ 51–54.)

Such terms are patently contradictory. Assignments of rights transfer all interest in the relevant ERISA benefits to the provider and divest the patient of all related rights. *See, e.g.*, *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) ("An assignment of a right [extinguishes] . . . the assignor's right to performance by the obligor . . . and the assignee acquires right to such performance."). In contrast, an authorized representative designation leaves the interest in ERISA

benefits with the patient and merely authorizes a provider to assert claims on the patient's behalf, in the patient's own name, subject to the patient's control. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1145 (C.D. Cal. 2015) ("[A]n authorized representative . . . works on behalf of the patient . . . and an assignee . . . acts on its own behalf as if it was the assignor.").

Because the quoted language from CarePoint's forms paradoxically purports to both transfer and not transfer the same rights, it must be read under the law of assignments—which requires an unequivocal expression of intent to transfer—as not transferring those rights. *See MHA*, 2013 U.S. Dist. LEXIS 7035, at *7; *cf. Lockhart v. Holiday Homes of St. John, Inc.*, 678 F.2d 1176, 1186 (3d Cir. 1982) ("[D]oubtful and uncertain language . . . is construed against the party preparing the contract, for he has created the troublesome ambiguity."). At most, such forms only designate CarePoint as an authorized representative of its patients.

CarePoint cannot, however, maintain standing in this lawsuit as an authorized representative of its patients because authorized representatives cannot initiate legal proceedings in their own name—they must sue in the names of the patients that they purport to represent. *See, e.g.*, *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 105 (3d Cir. 2008); *Almont*, 99 F. Supp. 3d at 1145. CarePoint has not done this; CarePoint has sued in its own name.

Accordingly, CarePoint cannot maintain this suit as an authorized representative,

and because CarePoint is not a valid assignee, the Complaint must be dismissed.

> **B.    CarePoint Lacks Standing for Claims Brought on Behalf of Patients 1 and 2 (and Any Other Similarly Situated Patients) Because the Assignments Are Barred by the Anti-Assignment Clauses**

Even if CarePoint had adequately pleaded the existence of assignments, the

plans' anti-assignment clauses forbid such assignments, and the claims based on

Patients 1 and 2, and any other later-identified patients with similar plan language,

must be dismissed. *See Advanced Orthopedics & Sports v. BCBS of Mass.*, 2015

U.S. Dist. LEXIS 93855, at *9 (D.N.J. July 20, 2015) (granting motion to dismiss

based on anti-assignment clause); *see also City of Hope Nat'l Med. Ctr. v.*

*HealthPlus, Inc*., 156 F.3d 223, 229 (1st Cir. 1998) ("ERISA leaves the

assignability or non-assignability of health care benefits . . . to the negotiations of

the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc*., 946 F.2d

1476, 1481 (9th Cir. 1991) ("ERISA welfare plan payments are not assignable in

the face of an express non-assignment clause in the plan.").

The plan terms for Patients 1 and 2 prohibit assignment. The plan for Patient

1 attached to the Amended Complaint plainly states:

> You cannot assign any benefits or monies due under this Certificate to
> any person, corporation, or other organization. Any assignment by
> You will be void. . . .

(Ex. L at 84.) Similarly, the plan for Patient 2 provides that rights can be assigned only with consent of United (Ex. O at 199), and CarePoint has not pleaded any such consent. This is fatal to CarePoint's claims. "[C]ourts routinely enforce anti-assignment clauses contained in ERISA-governed welfare plans" such as these, and dismiss claims on a Rule 12 motion. *Advanced Orthopedics*, 2015 U.S. Dist. LEXIS 93855, at \*9; *see also Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 605 (D.N.J. 2011); *Briglia v. Horizon Healthcare Servs.*, 2005 U.S. Dist. LEXIS 18708, at \*12-14 (D.N.J. May 13, 2005). Thus, CarePoint cannot hold a valid assignment for these claims.

CarePoint seeks to avoid the operation of these clauses by (1) alleging that United waived the anti-assignment provisions (Am. Compl. ¶ 133), and (2) alleging that New Jersey law precludes anti-assignment clauses (*id.* ¶ 60). Both arguments have been repeatedly rejected by courts in this district.

United's purported acts of waiver—communicating with providers and remitting payments directly to providers—do not waive the anti-assignment clause because those actions are proper even if there is no assignment of rights. United's communications with CarePoint do not depend upon assignment of any right by a patient; CarePoint could participate in the provider review process on its own behalf or correspond with United about ERISA determinations as a patient's authorized representative. "Whether Plaintiff had the right to submit a claim and

pursue [an] appeal on [the beneficiary's] behalf is a separate issue entirely from whether Plaintiff has the right to sue under § 502(a). In recognizing the former, Defendant has not acquiesced in the latter." *Middlesex Surgery Ctr. v. Horizon,* 2013 U.S. Dist. LEXIS 27542, at *13 (D.N.J. Feb. 28, 2013). Similarly, "a direct payment does not constitute waiver of an anti-assignment clause" when the plan permits direct payment to providers. *Advanced Orthopedics*, 2015 U.S. Dist. LEXIS 93855, at *19. (*See also* Ex. L at 88 (reserving United's right to directly pay non-network provider); Ex. O at 199 (same).) CarePoint's waiver argument for Patient 1 is also invalid in light of the plan's "no waiver" clause. (*See* Ex. L at 88.)

CarePoint cannot escape the operation of these anti-assignment clauses by pointing to a New Jersey statute that merely requires that, "*in the event that . . . [there is] an assignment of benefits . . . the carrier shall remit payment . . . directly to the health care provider in the form of a check. . . .*" N.J.S.A. § 26:2S-6.1(c) (emphasis added); Am. Compl. ¶ 60. This statute "does not address the question of whether an anti-assignment clause is enforceable"; it "merely regulates the method of payment when an assignment of benefits occurs." *Advanced Orthopedics*, 2015 U.S. Dist. LEXIS 93855, at *12. And even if the New Jersey law did forbid anti-assignment provisions, which it does not, the statute is preempted as to any ERISA plan. *See St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Ks., Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995) (holding state law forbidding anti-assignment

clause preempted); *Ark. BCBS v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1346 (8th Cir. 1991) (same); *see also* ERISA § 514.

## II.   CAREPOINT FAILS TO STATE A CLAIM FOR RELIEF UNDER ERISA (COUNTS I-III)

Aside from the standing defects, CarePoint's ERISA claims fail to state a "plausible" claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The ERISA claims (1) are premature, as CarePoint has failed to exhaust administrative appeals, (2) do not plausibly plead that United has breached any plan term, (3) do not plead that United is an ERISA fiduciary, and (4) are wrongly brought against United, an improper defendant for ERISA notice and appeals claims. The ERISA claims should be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

### A.   CarePoint Failed to Exhaust Available ERISA Remedies

CarePoint's first problem is that it has not exhausted available remedies, as is apparent from the Amended Complaint. "[A] federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). A plaintiff's failure to do this is a proper "basis for dismissal" when "the allegations in the complaint suffice to establish [such a failure]." *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 n.5 (3d Cir. 2015).

Exhaustion may be excused where it would be futile, but this requires a showing that the available remedies are substantially nonconforming with ERISA,

such that plaintiff has been materially prejudiced. *See, e.g.*, *Mallon v. Trover Sols. Inc.*, 613 F. App'x 142, 144 (3d Cir. 2015) (finding no futility where insurers "substantially complied with . . . [ERISA] requirements").[9] Here, CarePoint's failure to exhaust is clear from the face of the Complaint, and there is no futility.

CarePoint conflates the provider process, which *predates* the adverse benefit determination, with the formal ERISA appeal process following an adverse benefit determination. United's provider appeal process referenced in the Amended Complaint is an informal process occurring *before* claims are reprocessed and before an overpayment amount is identified as eligible for recoupment, and before ERISA notice and appeal rights are triggered. These provider appeals do not constitute an exercise of a patient's ERISA appeal rights, which are the appeals that must be exhausted before seeking redress in court. *See Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*, 297 F. App'x 192, 193 (3d Cir. 2008) (holding ERISA exhaustion requirement stems from the appeal rights in 29 U.S.C. § 1133).

CarePoint affirmatively pleads only that it has attempted to invoke United's informal provider appeal process (*see* Am. Compl. ¶¶ 94-98), and does not allege

---

[9]    *See also Holmes v. Col. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1213 (10th Cir. 2014) ("[T]he deemed-exhausted provision is limited to instances in which the notice and disclosure deficiencies actually denied the participant a reasonable review procedure."); *Jebian v. Hewlett-Packard Co.*, 349 F.3d 1098, 1114 (9th Cir. 2003) ("[Benefits decisions] will not be upset for procedural violations if the company has substantially complied with procedural requirements such that the claimant has all [] necessary information . . . .").

that it initiated § 1133 ERISA appeals.[10]  For example, CarePoint alleges that it

disputed the payments for Patient 1 and ultimately received an appeal decision on

October 27, 2015. (Am. Compl. ¶¶ 69-70; Ex. I.) But the ABD for Patient 1 was

not issued until March 9, 2016 (Bjorklund Ex. 1), and CarePoint's actions that

*predated* the ABD could not possibly exhaust the patient's ERISA appeal rights.

CarePoint attempts to explain away its lack of diligence and compliance

with ERISA requirements by simply asserting that "[e]xhaustion is . . . futile,"

(Am. Compl. ¶ 124), but this assertion is belied by the Amended Complaint.

CarePoint admits that using the provider process it successfully appealed at least

"10 [claims], totaling $352,096.71," nearly 15% of the amount initially at issue.

(Am. Compl. ¶ 13.) CarePoint's allegation that exhaustion is futile because it had

insufficient information about the disputed charges (Am. Compl. ¶ 123) is

contradicted by the Amended Complaint and its exhibits. Aside from individual

correspondence detailing particular audit results, including "Audit Findings/

Overpayment Notification" letters that itemize every billed charge for a claim,

state the allowed amount, and provide a code (with an associated legend)

explaining why each line item was adjusted (*see* Exs. A, at 1–6, & I, at 177–83),

---

[10]   CarePoint's use of even the informal provider appeal process is not supported
by the attached records. For example, CarePoint contends that "Mr. Aldeen clearly
informed defendants that the CarePoint Hospitals disputed all of the [144]
recoupment demands and were appealing all claims at issue" (Am. Compl.¶ 95),
citing to an email that states only: "Please find a general denial with respect to the
above item," and nowhere references an appeal. (Ex. R.)

United honored CarePoint's request to provide spreadsheets compiling information for various claims. (Am. Compl. ¶¶ 8-9; Exs. C & D.)

Accordingly, it is clear from the face of the Amended Complaint that CarePoint has not exhausted the necessary ERISA appeals and has no basis upon which to claim that the appeals process is futile.

## B.    CarePoint's ERISA §502(a)(1)(B) Claim for Benefits Fails (Count I)

CarePoint fails to allege *any* plan terms that purportedly entitle it to benefits or *any* facts demonstrating that the treatment afforded to subscriber-patients entitled CarePoint to payment above the amount it has already received. For this reason, CarePoint's claim under ERISA § 502(a)(1)(B) must be dismissed.

### 1.    CarePoint Does Not Adequately Allege Any Services Covered by the Applicable Plans

To state a claim for benefits under Section 502(a)(1)(B), CarePoint must plead facts showing that there are "benefits due" "under the terms of" the relevant ERISA plans. *See* 29 U.S.C. §1132(a)(1)(B); *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1009 (3d Cir. 1997) ("[Section 502(a)] only permits enforcement of the 'terms of the plan.'"). A plaintiff must, at minimum, allege the nature of the services provided, the terms of the plans at issue, and facts plausibly establishing that the defendant violated those terms. *See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *14 (D.N.J. Mar. 6, 2012) (plaintiffs

must "provide the court with enough factual information to determine whether [claims are] covered . . . under the plan").[11] Thus, CarePoint "must at least identify the specific plan provisions under which coverage is conferred with respect to *each* of the [hundreds of] ERISA claims identified in [its] complaint, and to allege sufficient facts to plausibly show the services rendered to each patient were indeed covered under that *particular* plan." *Id*. The Amended Complaint fails to do so.

CarePoint fails to sufficiently plead that any services rendered to the exemplar patients are covered by any plan term. Mere labels and conclusions are not enough; CarePoint must allege sufficient *facts* to show an entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). CarePoint attaches only the broadest of labels to the services it allegedly provided: "medically necessary elective treatment" for Patient 3, "medically necessary emergent" treatment for Patients 1 and 2, and "emergency services" for an unnamed patient. (Am. Compl. ¶¶ 86, 68, 85 & 10.) Such conclusory allegations are insufficient to demonstrate an entitlement to benefits under the plans.

None of the four exemplar plans fully covers every possible treatment a patient may undergo. The plan purportedly covering Patient 3 excludes coverage

---

[11]   *See also Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) ("[A] plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits."); *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp. Inc.*, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013) ("[Plaintiff ] must identify a specific plan term that confers the benefit in question.").

for certain elective treatments. (*See* Ex. P at 49-58 (listing plan exclusions).) The plans allegedly covering Patients 1 and 2 do not provide benefits for all services performed in a hospital emergency room: "only Emergency Services for the treatment of an Emergency Condition, as defined above, are Covered in an emergency department." (Ex. L at 26-27; *see also* Ex. O at 24 & 111.) The plan for the patient who allegedly received 9 days of "emergency care" provides that "[i]f you continue your stay in a non-Network Hospital after the date your Physician determines it is medically appropriate to transfer you to a Network Hospital, Non-Network Benefits will apply." (Ex. E at 27.) CarePoint does not allege with any specificity what treatment was provided or which (if any) plan provisions apply.

In sum, CarePoint has failed to "identify the specific plan provisions under which coverage is conferred with respect to *each* of the [hundreds of] ERISA claims identified in [their] complaint, and to allege sufficient facts to plausibly show the services rendered to each patient were indeed covered under that *particular* plan." *Broad St. Surgical Ctr., LLC*, 2012 WL 762498, at *14.[12]

---

[12]   Having failed to sufficiently plead any services covered by the plans for the exemplar patients, CarePoint certainly has not met its burden to plead claims based on the unidentified number of unnamed patients covered by an unidentified number of plans for the remaining 420 claims. CarePoint does not identify the services performed, does not identify the plan terms that cover these claims, and does not explain how the exemplar patients are or are not representative of the larger group. *See, e.g.*, *Sanctuary Surgical Ctr.*, 2013 WL 149356, at *3.

### 2. CarePoint Does Not Identify Any Plan Requiring Benefits Be Paid According to CarePoint's Billed Charges or that Any Benefits Are Due in Addition to What Has Already Been Paid

CarePoint fails to adequately allege that any benefits are due and owing. This is not the typical ERISA case where no payment has been made and a complaint that sufficiently pleads entitlement to *any* level of benefits can make out an ERISA violation. CarePoint does not, and cannot, allege that United has failed to pay any one of the 423 claims or that United has sought to recoup the full payment on any one claim. United has paid each and every claim. Rather, the only dispute is whether CarePoint is entitled to *more* than the amount paid (and not recouped) by United. CarePoint has not adequately pleaded any such entitlement.

CarePoint's claims for benefits for emergency care rest on the false premise that a provider can extract payment from an ERISA plan at whatever rate the provider chooses to bill, instead of the plan providing benefits at a rate set by the plan. CarePoint fails to identify ***any provision*** of ***any plan*** that requires payment of out-of-network benefits at their billed charges. In fact, all four plans attached to the Amended Complaint specifically advise patients that they do ***not*** reimburse based on an out-of-network provider's billed rates.[13] CarePoint's assertion that United is

---

[13]   *See* Ex. L at 4 ("Our Allowed Amount is not based on UCR and the Non-Participating Provider's actual charge may exceed Our Allowed Amount. You must pay the difference . . . ."); Ex. E at 92 (noting plan does not cover costs that exceed "Eligible Expenses"); Ex. P at 9 ("You are [] responsible for any [out-of-

responsible for reimbursing "total billed charges" or "80% of the *billed amount*" (Am. Compl. ¶¶ 10, 36, 89, 108, 129 (emphasis added)) is contradicted by the language of all four plans, explicitly limiting out-of-network benefits to the "allowed amount" or "eligible expenses."[14] When documents attached to a complaint present facts that contradict the facts pleaded in the complaint, courts rely on the facts appearing in the attached documents, not in the complaint. *See, e.g.*, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 861 (3d Cir. 1994) (relying on facts in attached documents when those facts were inconsistent with pleaded facts).[15]

Likewise, CarePoint's claims for non-emergent "elective" procedures depend on the false premise that it is entitled to a certain percentage of its billed

---

network] provider charges that exceed the reasonable and customary charges ...."); Ex. O at 11 ("You are required to pay the amount that exceeds the Eligible Expense" for an out-of-network provider.").

[14] *See* Ex. L at 26-27 & Rider 9.13 p. 3 (benefits based on "Allowed Amount" (generally 140% of Medicare rate) or amount paid to In-Network Providers, whichever is higher); Ex. O at 24, 108-09 (benefits based on "Eligible Expenses" which are the negotiated rate with Non-Network Provider or, if none, 140% of Medicare rate, or if none, a rate determined by gap methodology); and Ex. E at 16 & 99-100 (benefits based on "Eligible Expenses" which are the negotiated rate the Non-Network Provider or, if none, competitive fees in the area, or if none, 50% of the billed charges).

[15] *See also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (quotations omitted); *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (same); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (same); *Caione v. Navient Corp.*, 2016 WL 4432687, at *4 (D.N.J. Aug. 18, 2016) (dismissing complaint where "[p]laintiff's ... claims [were] ... inconsistent with the facts that ... incorporated within ... the attachments").

charges. CarePoint attempts to bridge this gap by alleging that its "total billed charges reflect the usual, customary and reasonable rates for the particular medical services provided at the CarePoint Hospitals." (Am. Compl. ¶ 90.) The question is not whether the rates are "usual and customary" to *CarePoint.* The question is whether the fees are allowable under the terms of the respective plans providing coverage based on the "allowed amount" or "eligible amount," which is calculated by *United* (not CarePoint) based on Medicare rates or fees charged by similar providers in that area. CarePoint does not allege that United abused its discretion in applying plan terms to determine the eligible or allowed amounts. CarePoint cannot usurp the plan language and dictate the level of benefits for ERISA plans, nor can CarePoint substitute itself as the claims administrator in applying the terms of those plans, simply by generating and submitting excessive bills.

CarePoint does not allege that it received less than the Eligible Expenses or Allowed Amount provided for under the plans. CarePoint's allegations that it did not receive its full billed amount fail to state an ERISA claim because CarePoint does not, and cannot, adequately plead that it is entitled to the full amount under the terms of the plans.

## C. CarePoint's ERISA Breach of Fiduciary Duty Claim Fails (Count II)

CarePoint lacks standing to bring Count II because the breach of fiduciary duty claims fall outside the scope of the pleaded assignment language. These

claims are not assigned through forms like the ones pleaded by CarePoint, which are titled "Assignment of Insurance Benefits" and refer only to the assignment of "rights to receive benefits arising out of any coverage source." (Am. Compl. ¶ 52; *see also id.* ¶ 51 (assigning "rights [and] benefits . . . arising out of any policy of insurance . . . for the charges for service rendered to me by the hospital").) For this reason, courts have held that these claims cannot be assigned without express and knowing language that specifically assigns them. *See Premier Health Ctr., P.C. v. UnitedHealth Grp*., 292 F.R.D. 204, 218–19 (D.N.J. 2013)) ("[A]n assignment of benefits . . . cannot logically imply the right to assert ERISA claims for injunctive relief . . . for services [the patient] may receive from other providers in the future."); *Griffin v. Lockheed Martin Corp*., 157 F. Supp. 3d 1271, 1276 (N.D. Ga. 2015) (disallowing fiduciary-duty and civil penalty claims where provider had obtained only an "assignment of benefits"), *aff'd*, 647 F. App'x 920 (11th Cir. 2016). The assignment language pleaded by CarePoint makes no reference to breach of fiduciary duty claims and is insufficient to assign such claims.

There are good reasons to have a heightened standard for finding an assignment of these claims. As the Fifth Circuit has noted, the rights implicated by fiduciary duty claims may "affect[] all plan participants, and unsuccessful claims can waste plan resources." *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997). Allowing third

parties to bring these claims might disrupt the fiduciary duty owed to other plan participants. *Id*. This concern is prudent: providers like CarePoint serially file claims for reimbursement on behalf of their patients and often initiate litigation regarding those claims;[16] the short-term, profit-driven interests of CarePoint are likely different than the interests of plan participants, who depend on the long-term viability of a plan.

There are other inherent flaws with Count II. CarePoint alleges not only that it has been assigned the right to bring a claim for breach of fiduciary duty, but that the actual fiduciary duty owed to the plan participant has been partially assigned to CarePoint and that United breached the fiduciary duty it owed to CarePoint. (*See, e.g.*, Am. Compl. ¶¶ 116-17 ("As ERISA fiduciaries, Defendants owed the CarePoint Hospitals a duty of care," and "Defendants also owed the CarePoint Hospitals a duty of loyalty . . . .").) This is problematic for a number of reasons. For instance, fiduciaries cannot legally maintain a duty of loyalty as to two parties simultaneously when the parties have conflicting interests, as is the case with providers like CarePoint and plan participants for the reasons explained above. *See, e.g.*, *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 639 (W.D. Wis. 1979) (finding a breach of fiduciary duty where ERISA fiduciary "acted in a transaction

---

[16]  *See Hudson Hosp. Opco, LLC d/b/a CarePoint Health v. Horizon Healthcare Servs.*, Case No. 2:16-cv-05922-JMV-JBC (D.N.J. 2016); *HUMC OPCO LLC, d/b/a/ CarePoint Health v. Aetna*, Case No. 2:16-cv-00168 (D.N.J. 2016).

involving the Plan on behalf of persons with interests adverse to the interests of the Plan and its participants"); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 547 (S.D. Tex. 2003) ("[A]mong the responsibilities and duties imposed on fiduciaries by ERISA is avoidance of conflicts of interest.").

Additionally, unlike the right to receive benefits, which can be assigned piecemeal due to the fact that it is predicated on discrete instances of medical treatment, the fiduciary duties of care and loyalty are each continuous duties and therefore cannot be subdivided or assigned in a piecemeal fashion. *See, e.g.*, *United States v. Mason Tenders Dist. Council of Greater N.Y.*, 909 F. Supp. 882, 888 (S.D.N.Y. 1995) (finding that "fiduciary duty under ERISA is continuous").[17]

Accordingly, this Court should find that the rights to bring breach of fiduciary duty claims were not assigned to CarePoint both because (1) CarePoint, as a Provider whose interests may conflict with plan participants, is ineligible to be an assignee of these claims, and (2) these claims can be assigned only through express and knowing assignments referencing these specific rights, which CarePoint has not pleaded. CarePoint does not have standing to pursue Count II.

Even if CarePoint did have standing, it fails to allege facts sufficient to establish that United is a fiduciary under ERISA. As the Third Circuit has made

---

[17]   *See also Coburn v. Evercore Trust Co., N.A.*, 160 F. Supp. 3d 361, 370 (D.D.C. 2016) (same), *aff'd*, 884 F.3d 965 (D.C. Cir. 2016); *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 814 (S.D. Ill. 2006) (same).

clear, "the linchpin of fiduciary status under ERISA is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994). Discretion does not include performing ministerial tasks, processing and administering claims, or calculating payment amounts. *Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., Inc.*, 2008 WL 8874292, at *3 (D.N.J. Feb. 21, 2008) (entity performing such tasks "will not . . . constitute a fiduciary under ERISA.").

Fiduciaries "exercise more discretion and control than that of a mere claims processor." *Id.* (quotations omitted). Discretion requires actions such as managing the investment of plan funds. *Curcio*, 33 F.3d at 233. CarePoint does not allege that United did anything more than mere claims processing and calculation for the claims at issue. The Complaint lacks allegations that United exercised the requisite level of discretion over the plan funds to be considered a fiduciary.

CarePoint's conclusory allegation that United is the Plan Administrator for all plans does not render United a fiduciary. First, by operation of ERISA, the Plan Administrator is by default the plan sponsor—the employer—unless designated otherwise. *See* ERISA 3(16). CarePoint does not allege any facts showing that any United Defendant has been designated the Plan Administrator, and the four plans attached to the Amended Complaint uniformly state that *the employer*, not United, is the plan administrator. (Ex. E at 91; Ex. L at 84; Ex. O at 114 & 176; Ex. P at 160.) CarePoint fails to plead that United is an ERISA fiduciary.

### D.     CarePoint's ERISA § 503 Claim to Enforce the Review Process Fails Because United Is Not a Proper Defendant (Count III)

Count III is deficient because CarePoint does not plead that United is the proper defendant for an ERISA § 503 claim. As numerous courts have held, Section 503 is not enforceable against any entity other than an "employee benefit plan." *See* 29 U.S.C. § 1133 ("*[E]very employee benefit plan* shall . . . .") (emphasis added). CarePoint never alleges that United is the benefit plan, nor could it based upon the plans attached to the Amended Complaint. Even crediting CarePoint's allegation that United is the "Plan Administrator"—belied by the plans it relies on (*see* Part II.C)—the claim still fails because an ERISA § 503 claim cannot be brought against a plan administrator.[18] CarePoint has not plausibly pleaded any claim against United. *See N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 548 (S.D.N.Y. 2013) (dismissing § 503 claim because plaintiff "does not allege that United is the 'plan'") (citations omitted)), *aff'd in part and vacated on other grounds*, 798 F.3d 125 (2nd Cir. 2015).

Count III is also infirm for other reasons. CarePoint characterizes this Count as an alleged failure to provide "full and fair review" under 29 U.S.C. § 1133 (Am.

---

[18]    *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996) (holding §503 obligations apply only to benefit plans); *see also Stuhlreyer v. Armco, Inc.*, 12 F.3d 75, 79 (6th Cir. 1993) ("[A] plan administrator cannot violate §1133 . . . because §1133 imposes obligations on the 'plan' rather than the 'plan administrator.'"); *Groves v. Modified Ret. Plan  of the Johns Manville Corp. & Subs.*, 803 F.2d 109, 116 (3d Cir. 1986) (same).

Compl. ¶ 122), but this provision does not provide for a standalone cause of action, and CarePoint does not specify any other basis for enforcing these rights. *See, e.g.*, *Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield of N.J.*, 2016 WL 4499551, at *11 (D.N.J. Aug. 25, 2016) ("[N]either Section 503 of ERISA, 29 U.S.C. § 1133, nor its accompanying regulation, 29 C.F.R. § 2560.503-1, gives rise to a private cause of action."); *Piscopo v. Pub. Serv. Elec. & Gas Co.*, 2015 U.S. Dist. LEXIS 82982, at *12 (D.N.J. June 25, 2015) (granting motion to dismiss). Even if CarePoint could validly bring a claim under § 1133, it has not pleaded that it even attempted to file § 1133 ERISA appeals. CarePoint only specifically references appeals filed pursuant to a provider-specific process that United maintains as a courtesy. This provider-specific appeal process is not mandated under ERISA and does not trigger ERISA's procedural protections.

## III.    CAREPOINT'S REMAINING CLAIMS FAIL TO STATE A CLAIM FOR RELIEF (COUNTS IV-XI)

CarePoint's state law claims fail because they are preempted as to any ERISA plans and are inadequately pleaded.

### A.    CarePoint's State Law Claims Are Preempted (Counts IV-XI)

CarePoint purports to bring Counts IV-XI pursuant to New Jersey state law. While CarePoint brings Counts IV-VI only with respect to unidentified non-ERISA plans, CarePoint appears to bring Counts VII-XI with respect to ERISA plans as well. All of these claims are both completely and expressly preempted.

ERISA completely preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Under complete preemption, "even a state law that can arguably be characterized as 'regulating insurance [under the ERISA savings clause]' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Id*. at 217-18. CarePoint's state law claims do just this—the relief sought by these claims is the benefits allegedly owed to CarePoint labeled with different names.

CarePoint's claims are also preempted under ERISA's express preemption clause, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see, e.g.*, *Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983). It preempts any cause of action that to prove would "require reference to plan documents to determine what each policy covers, and then examining . . . claims administration processing and procedures in light of the plan's contours," including contract and fraud claims. *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295 (3d Cir. 2014); *see also Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, 2007 U.S. Dist. LEXIS 61137, at *21-23 (D.N.J. Aug. 20, 2007) (finding plaintiff-provider's NJCFA claim completely and expressly preempted under ERISA).

## B.    CarePoint's Remaining Counts Fail to State a Claim for Relief

To the extent CarePoint brings its state law claims as to non-ERISA plans, it faces a more fundamental problem: CarePoint never identifies a non-ERISA plan, nor does it affirmatively allege that such plans exist.[19] All four plans attached to the Amended Complaint are ERISA plans. (*See* Exs. E, L, O & P.) CarePoint instead relies on hypothetical pleading mechanisms, using phrases such as: "*To the extent that* some of the Plans are not employee welfare benefit plans governed by ERISA . . . ." (Am. Compl. ¶ 128 (emphasis added).) Absent specific allegations identifying a non-ERISA plan that could give rise to its state law claims, CarePoint's Amended Complaint fails to satisfy the requirements of notice pleading under Fed. R. Civ. P. 8(a), and its state law claims must be dismissed.[20] *See, e.g.*, *Broad St. Surgical Ctr.*, 2012 WL 762498, at *14 (noting that plaintiffs

---

[19]   The New Jersey laws cited in ¶¶ 39–43 appear to be irrelevant or inaccurate. For instance, CarePoint asserts that "New Jersey law requires healthcare insurers to . . . [notify subscribers] that they are entitled to have 'access' and 'payment of appropriate benefits' for emergency conditions," but omits the critical next two words of the statute, "*if covered.*" N.J.A.C. § 11:24A-2.5 (emphasis added). CarePoint alleges that insurers must pay claims within a certain timeframe, but it cites a law applicable only to certain non-profit insurers organized under New Jersey state law. *See* N.J.S.A. §17:48E-1(e); N.J.S.A. § 17:48E-10.1(d)(1).

[20]   Because CarePoint failed to identify any non-ERISA plans, United cannot respond on the merits to CarePoint's state law claims or argue whether the Court should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Should CarePoint identify any non- ERISA plans, United expects to make both arguments.

must "provide the court with enough factual information to determine whether [claims are] covered . . . under the plan").

### 1. CarePoint inadequately pleads Count IV.

Count IV alleges a breach of contract claim as to the unspecified non-ERISA plans, but it fails to adequately state a claim for the same reasons it does not state a claim for breach of any ERISA plan. CarePoint does not plausibly plead an entitlement to relief because it does not (1) describe the services provided, (2) identify a plan term—or even a plan—that affords benefits, or (3) explain why the amount of payment it has received is insufficient under the plan. *See* Part II.B.

### 2. CarePoint inadequately pleads Count V.

To sustain its breach of good faith and fair dealing claim, CarePoint must plead facts demonstrating that United undertook actions "which will have the effect of destroying or injuring the right of [the plan participant] to receive the benefits of the contract" and "that the defendant acted with bad motive or intention." *Scivoletti v. JP Morgan Chase Bank, N.A.*, 2010 WL 2652527, at *6 (D.N.J. June 25, 2010) (quotations omitted). CarePoint never alleges United took actions that "destroy" the benefits owed under a contract.

### 3. CarePoint inadequately pleads Count VI.

CarePoint's claim for breach of fiduciary duty fails for three reasons. First, CarePoint cannot identify the basis for any fiduciary duty to the patients. Any

claim based on an ERISA fiduciary duty would be preempted. CarePoint has not

alleged the existence of any non-ERISA plan, much less the specific terms of a

plan that would establish a fiduciary duty. Under New Jersey state law an insurer

only "owes a fiduciary duty to its insured under certain circumstances," which

involves a fact-specific inquiry of the underlying contract. *Polito v. Cont'l Cas.

Co.*, 689 F.2d 457, 462 (3d Cir. 1982); *Rova Farms Resort, Inc. v. Inv'rs Ins. Co.

of Am.*, 323 A.2d 495, 504-05 (N.J. 1974). CarePoint does not allege the existence

of any contract between United and CarePoint's patient-assignors, much less

specific terms giving rise to a duty. Nor does CarePoint allege facts that would

establish a fiduciary duty under common law; it does not allege that United was in

a "dominant or superior position" or that patients placed "trust and confidence" in

United, which is the "essence of a fiduciary relationship."  *F.G. v. MacDonell*, 696

A.2d 697, 703-04 (N.J. 1997).

Second, even if such a duty existed, CarePoint fails to explain how it was

breached.  CarePoint alleges only that "Defendants breached their fiduciary duties

owed to the CarePoint Hospitals in a number of ways, described more fully

above." (Am. Compl. ¶ 154.) This type of allegation is a legal conclusion

insufficient to state a claim under *Twombly.* Moreover, CarePoint does not allege

that United failed to exercise a duty of care or loyalty when calculating benefits or

administering claims.

Third, even if such a duty exists and has been breached, CarePoint lacks standing because the claim cannot be assigned. "New Jersey law clearly forbids the assignment of prejudgment tort claims" such as breach of fiduciary duty. *Integrated Sols., Inc. v. Serv. Support Specialties, Inc*., 124 F.3d 487, 490 (3d Cir. 1997) (stating general rule prohibiting assignment of tort claims);[21] *In re Estate of Lash*, 776 A.2d 765, 769 (N.J. 2001) ("Breach of fiduciary duty is a tort.").

### 4.   CarePoint inadequately pleads Count VII.

CarePoint pleads itself out of its quantum meruit claim by asserting that all of its claims are based on contracts (even if it fails to identify any contracts between itself and United). "It is well established that claims of quantum meruit and unjust enrichment do not exist where a valid express contract exists concerning the same subject matter." *Broad St. Surgical Ctr*., 2012 WL 762498, at *20. Because a contract exists between United and the Plans on this subject matter, a provider, acting as assignee of a patient, cannot bring a claim for quantum meruit. *Id.* (finding that provider-assignee's proposed quantum meruit claim was futile).

A quantum meruit claim also requires a showing of unjust enrichment. CarePoint only pleads that United's offsets unjustly enriched United and provides no further explanation. This unsupported legal conclusion is entitled to no weight. *See Iqbal*, 556 U.S. at 678. A court in this district recently rejected a nearly

---

[21]   As the panel noted, its conclusion regarding New Jersey law is in line with what "New Jersey courts have consistently held." *Integrated Solutions,* 124 F.3d at 490.

identical claim, noting that "Plaintiffs point to no case in which an out-of-network

physician or medical practice has been able to proceed with an unjust enrichment

claim against a plan administrator solely because medical services have been

provided," and that in any event such a claim would be completely preempted by

ERISA. *Cohen v. Horizon BCBS of N.J.*, 2017 U.S. Dist. LEXIS 23999, at *19-20

(D.N.J. Feb. 21, 2017).

### 5.    CarePoint inadequately pleads Count VIII.

Count VIII alleges a promissory estoppel claim. First, "[u]nder New Jersey

law, 'the *sine qua non*' of a promissory estoppel claim is a 'clear and definite

promise.'" *Zarrilli v. John Hancock Life Ins. Co.*, 231 F. App'x 122, 124 (3d Cir.

2007) (internal quotation omitted). CarePoint merely alleges that United

"represented to [CarePoint] that the medical treatment sought by the Patients [from

CarePoint] was a covered procedure." (Am. Compl. ¶ 162.) This does not plead the

critical element of "a clear and definite promise." *Zarrilli*, 231 F. App'x at 124.

Nor does CarePoint plausibly plead that United breached that promise, where

many overpayments were identified on bases unrelated to coverage, such as

CarePoint billing United incorrectly, receiving double payment, or submitting

claims for insureds not covered by a United plan at the time of service. (*See* Ex. C,

"Overpayment Reason" column.)

CarePoint also fails to plead detrimental reliance. CarePoint's claim that "[i]n the absence of Defendants' statements . . . [CarePoint] would not have provided the elective hospital services" (Am. Compl. ¶ 163) is undercut by its other allegations. As to emergency care, CarePoint pleads that New Jersey state law requires it to provide many of the medical services at issue, and therefore it cannot show reliance on any action by United. (*Id*. ¶¶ 39–41.) As to elective care, CarePoint pleads that its patients remain financially responsible for unpaid amounts. (*Id*. ¶ 55.) Therefore, CarePoint cannot suffer any injury based on a claim for elective care regardless of the amount it receives from United because CarePoint alleges its patients must pay CarePoint for any amounts that United does not pay.

### 6.    CarePoint inadequately pleads Count IX.

Count IX seeks temporary and injunctive relief. To obtain a preliminary injunction, CarePoint must show that it is likely to succeed on its claims, that it will suffer irreparable harm, that United will *not* suffer irreparable harm, and that the public interest favors an injunction. *Shah v. Shah*, 2013 WL 5793445, at *1 (D.N.J. Oct. 28, 2013). The standard for a permanent injunction "is the same . . . except that the plaintiff must show actual success on the merits." *Id*. CarePoint's Amended Complaint contains no allegations regarding irreparable harm (or the lack thereof) to it or United, nor does it allege that an injunction is in the public

interest. *Id.* This is a breach of contract case for money damages, which precludes a finding of irreparable harm. *See Black United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 161 (3d Cir. 1985) ("[I]njury compensable by damages does not constitute the irreparable harm prerequisite of a preliminary injunction."). And CarePoint has not demonstrated any reasonable likelihood of success on the merits for all of the reasons set forth in this motion.

Moreover, to the extent CarePoint seeks an injunction requiring United to take specific actions with respect to plans not at issue in this case, CarePoint lacks standing. United's duties and obligations run to the plan participants. Even if CarePoint did have standing to assert claims on behalf of the participants of the plans at issue—which it has not adequately pleaded—it certainly does not have standing to require specific actions for processing claims under plans unrelated to any of the claims at issue and whose terms CarePoint has no legal basis to invoke.

### 7.    CarePoint inadequately pleads Count X.

Count X seeks declaratory relief pursuant to 28 U.S.C. § 2201. While the Declaratory Judgment Act "creates a form of relief," "it does not create a cause of action courts may be compelled to enforce." *In re Azek Bldg. Prods. Mktg & Sales Practices Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015). Plaintiffs seeking a declaratory judgment must therefore allege an independent substantive basis for relief. *Id.*; *see also Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 290 (3d Cir.

1948) (claim for declaratory relief must contain "operative facts justifying the judicial declaration," and "a sufficient legal interest" entitling one to relief).

CarePoint fails to adequately allege *any* independent violation of federal or state law. CarePoint's inadequately pled claims cannot serve as the substantive basis for the declaratory judgment claim because they fail as a matter of law. *See Interfaith Cmty. Org. v. Honeywell Intern., Inc*., 263 F. Supp. 2d 796, 871 (D.N.J. 2003) (noting that a declaratory judgment claim fails when the substantive claims fail). And as described above, a state law claim would be preempted as to the ERISA plans. CarePoint fails to adequately identify or plead an entitlement to relief under any other legal basis. *See Glauberzon v. Pella Corp*., 2011 U.S. Dist. 38138, at *44-45 (D. N.J. Apr. 5, 2011) (dismissing declaratory judgment action as it was "not clear to the Court the legal basis" of plaintiff's claim).

To the extent CarePoint seeks a basis for a declaratory judgment that it is entitled to payment of whatever it chooses to charge by citing an unpublished case, *Aetna Health, Inc. v. Srinivasan*, 2016 N.J. Super. Unpub. LEXIS 1515 (App. Div. June 29, 2016), this attempt is unavailing. In *Aetna Health*, the court affirmed denial of an insurer-plaintiff's declaratory judgment claim against a provider-defendant, holding that the insurer was required to pay a "benefit large enough to insure that the non-participating provider does not balance bill the member for the difference between his billed charges and the [insurer] payment." *Id*. at *10. To

support its decision, the court vaguely referred to unspecified "pertinent regulations" which provided an insurer's obligation to fully cover costs in some instances.[22] *Id.* at \*9-10. The court did not identify the "pertinent regulations," nor did it discuss the duties imposed by such regulations, to which entities they apply, or what circumstances would require full payment. *Id.* Moreover, the court affirmed a jury verdict that awarded the provider only one quarter of the amount sought (the difference between what had been paid and what was charged). *Id.* at \*15.

Further, CarePoint does not adequately allege that any of these regulations or laws apply to United. Chapter 24 provides that "[t]hese rules are only applicable to managed care plans that constitute a health maintenance organization as defined herein . . . ." N.J.A.C. § 11:24-1.1.[23] Nowhere does CarePoint allege that any of the Defendants is an HMO with respect to any plan at issue; it alleges only that "Defendants sell health insurance plans" and that "Defendants acted as the plan administrators and fiduciaries . . . ." (Am. Compl. ¶¶ 3 & 93). None of the four

---

[22]   CarePoint assumes the opinion was referring to N.J.A.C. § 11:24-9.1(d)(9), which states that patients have the right to be free from balance billing, but does not place that burden solely on the insurer. A provider is prohibited from charging an excessive fee under N.J.A.C. § 13:35-6.11(b).

[23]   An HMO is defined as an entity that provides or arranges for health care services "through an organized system that combines the delivery and financing of health care on a prepaid basis to members." N.J.A.C. § 11:24-1.2.

attached plans is an HMO plan. Such pleading is insufficient to show that the New Jersey law applies. *Cf. Cohen*, 2017 U.S. Dist. LEXIS 23999, at *17 n.7.

CarePoint fails to specify the statute or regulation at issue, plead facts showing that the statute applies to any of the three United Defendants or any of the plans at issue, and does not sufficiently plead that it is entitled to any compensation above what it has already received. Because CarePoint fails to allege the applicability of the regulations as against United, *Aetna Health* does not provide a basis for relief and CarePoint's Count X should be dismissed.

### 8.    CarePoint inadequately pleads Count XI.

CarePoint alleges violations of New Jersey's Consumer Fraud Act "as assignee[]" of its patients. (Am. Compl. ¶ 189.) First, these claims do not fall within the scope of the (invalid) assignments CarePoint pleads, which only cover the right to receive payment of healthcare benefits and to bring related claims. (*See id.* ¶¶ 51-52.) CarePoint does not allege that it has received assignments to bring claims based on fraudulent representations.  No reading of the alleged assignments could support such a conclusion, particularly because it would deprive patients of the ability to assert their own claims. *In re Jason Realty, L.P.*, 59 F.3d at 427 ("An assignment of a right [extinguishes] . . . the assignor's right . . . .").

Second, any assignment would be ineffective, because only those who have actually "suffer[ed] an[] ascertainable loss . . . as a result of . . . [a] practice

declared unlawful under [the] act" can bring a claim. N.J.S.A. § 56:8-19. CarePoint never alleges that it suffered any such injury, nor can it, because "Provider Plaintiffs cannot be considered 'consumers' by any interpretive stretch of the New Jersey Act." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1303-04 (S.D. Fla. 2003) (dismissing provider-assignees' claim). Even if a provider *could* assert a consumer fraud claim, CarePoint does not allege that its patient-assignors suffered any ascertainable loss.

   Third, CarePoint fails to meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to plead a specific false statement and the listener's ignorance of its falsity, among other things. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006). CarePoint pleads only that "on information and belief, Defendants . . . representing that the plans provided coverage for out-of-network medically necessary treatment"—though CarePoint does not contend that United denied coverage for any claim, just that it disputed the amount of coverage—and "concealed" its practice of later auditing claims. (Am. Compl. ¶ 184.) This vague claim does not meet the heightened pleading requirements of Rule 9(b). *See Suprema Specialties*, 438 F.3d at 276.

## **CONCLUSION**

   For all of these reasons, the Court should grant United's motion to dismiss the Amended Complaint with prejudice.

Dated: May 2, 2017                          *s/ Thomas R. Curtin*
                                            Thomas R. Curtin
                                            George C. Jones
                                            Kathleen N. Fennelly
                                            GRAHAM CURTIN
                                            A Professional Association
                                            4 Headquarters Plaza
                                            P.O. Box 1991
                                            Morristown, New Jersey 07962-1991
                                            Telephone: (973) 292-1700
                                            Facsimile: (973) 292-1767

                                            *~ and ~*

                                            Michelle S. Grant
                                            Shannon L. Bjorklund
                                            DORSEY & WHITNEY LLP
                                            50 South Sixth Street, Suite 1500
                                            Minneapolis, MN 55402-1498
                                            Telephone: (612) 340-2600
                                            Facsimile: (612) 340-2868

                                            *Attorneys for Defendants United
                                            Healthcare Services, Inc., OptumInsight,
                                            Inc., and UnitedHealth Group, Inc.*