# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IJKG, LLC, IJKG PROPCO LLC  and
IJKG OPCO LLC d/b/a CAREPOINT
HEALTH —BAYONNE MEDICAL
CENTER, HUDSON HOSPITAL OPCO
LLC d/b/a CAREPOINT HEALTH -
CHRIST HOSPITAL, AND HUMC OPCO
LLC d/b/a CAREPOINT HEALTH —
HOBOKEN UNIVERSITY MEDICAL
CENTER,

                             Plaintiffs,

    vs.

UNITED HEALTHCARE SERVICES,
INC., OPTUMINSIGHT, INC. AND
UNITEDHEALTH GROUP, INC.,

                             Defendants.

Hon. Claire C. Cecchi, U.S.D.J.

Hon. Mark Falk, U.S.M.J.

Civil Action No. 2:16-cv-8637-
CCC-MF

---

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS THE FIRST AMENDED COMPLAINT

---

**K&L GATES LLP**
One Newark Center
Tenth Floor
Newark, New Jersey 07102
(973) 848-4000

Anthony P. La Rocco
  Of Counsel
George P. Barbatsuly
Stacey Hyman
  On the Brief

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iii

PRELIMINARY STATEMENT ............................................................1

OVERVIEW OF THE CAREPOINT HOSPITALS' CLAIMS...............................3

LEGAL ARGUMENT.....................................................................6

I.    Standards of Review ............................................................6

II.   Plaintiffs Have Standing As Assignees Of The United Subscribers ..............8

      A.    ERISA Plan Benefits May be Assigned to a Health Care Provider......8

      B.    Plaintiffs Sufficiently Plead Standing under the Plans .........................9

      C.    Alleged Anti-Assignment Clauses Do Not Foreclose Plaintiffs'
            Claims...........................................................................13

            1.    Anti-assignment clauses are unenforceable in New Jersey ......13

            2.    Even if anti-assignment clauses were enforceable, the CarePoint
                  Hospitals have sufficiently pled waiver .....................................16

            3.    Dismissal based on purported anti-assignment clauses for
                  "other later-identified patients with similar plan language" is
                  premature ..................................................................19

III.  Plaintiffs Plead Viable ERISA Claims .........................................20

      A.    Plaintiffs Sufficiently Allege that They Exhausted Plan Remedies and
            that Further Exhaustion would be Futile.............................20

      B.    Plaintiffs Sufficiently Plead Plan Terms ............................23

      C.    Plaintiffs Plead Viable Breach of Fiduciary Duty Claims .................27

      D.    Plaintiffs Plead a Viable Claim under ERISA § 503 .........................29

IV.    Plaintiffs Sufficiently Plead State Law Claims ..............................................31

    A.    Plaintiffs Sufficiently Plead Breach of Contract Claims ...................31

    B.    Plaintiffs Sufficiently Pleads a State Law Claim for Breach of the Duty of Good Faith and Fair Dealing .................................................32

    C.    Plaintiffs' Plead a Viable State Law Claim for Breach of Fiduciary Duty ....................................................................................................33

    D.    Plaintiffs' Plead Viable a State Law Promissory Estoppel Claim ......34

    E.    Plaintiffs Plead Viable Claims for Declaratory and Injunctive Relief .................................................................................................36

    F.    Plaintiffs Adequately Plead Their New Jersey Consumer Fraud Act Claim .................................................................................................38

CONCLUSION ........................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Advanced Orthopedics & Sports v. BCBS of Mass.*,
Civ. NO. 14-7280 FLW, 2015 U.S. Dist. LEXIS 93855
(D.N.J. July 20, 2015) ..........................................................................14, 18

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015) ...............................................12, 25

*Ambulatory Surgical Center of N.J. v. Horizon Healthcare Servs., Inc.*,
No. 07–2538 (SDW) 2008 WL 8874292 (Feb. 21, 2008) .......................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................7

*Bell v. Hood*,
327 U.S. 678 (1946) ............................................................................. 6, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................7

*Blue Cross & Blue Shield of Rhode Island v. Korsen*,
945 F. Supp. 2d 268 (D.R.I. 2013) ..........................................................29

*Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*,
2012 U.S. Dist. LEXIS 30466 (D.N.J. Mar. 6, 2012)..................23, 24, 36

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165, 179 (3d Cir. 2014)..............................................................9

*Chao v. New Jersey Licensed Beverage Ass'n, Inc.*,
461 F. Supp. 2d 303 (D.N.J. 2010) .........................................................28

*Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*,
303 F. Supp. 2d 1030 (N.D. Cal. 2004) ..................................................20

*Exact Sciences Corp. v. Blue Cross Blue Shield of North Carolina*,
1:16CV125, 2017 WL 1155807 (M.D.N.C. Mar. 27, 2017) .............13, 19

*F.G. v. MacDonell*,
150 N.J. 550 (1997)..................................................................................33

*First Choice Fed. Credit Union v. Wendy's Co.*,
2017 U.S. Dist. LEXIS 20754 (W.D. Pa. Feb. 13, 2017).......................38

*Focus v. Allegheny Cnty. Court of Common Pleas*,
75 F.3d 834 (3d Cir. 1996).........................................................................7

*Gould Elecs. Inc. v. U.S.*,
220 F.3d 169 (3d Cir. 2000)...................................................................6, 7

*Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*,
No. H-15-0297, 2015 WL 3756492 (S.D. Tex. June 16, 2015) .............24

*Gregory Surgical v. Horizon Blue Cross Blue Shield of New Jersey*,
2007 WL 4570323 (Dec. 26, 2007) ........................................................16

*Hahnemann University Hosp. v. All Shore, Inc.*,
514 F. 3d 300 (3d Cir. 2008)....................................................................28

*Harrow v. Prudential Ins. Co. of Am.*,
279 F.3d 244 (3d Cir. 2002)......................................................................21

*Hermann Hosp. v. MEBA Med. & Benefits Plan*,
845 F.2d 1286 (5th Cir. 1988) ..................................................................14

*HUMC Opco LLC v. United Benefit Fund*,
Civ. No. 16-168, 2016 WL 6634878 (D.N.J. Nov. 7, 2016) ...................30

*In re Cardinal Health, Inc. ERISA Litig.*,
424 F. Supp. 2d 1002 (S.D. Ohio 2006) ..................................................28

*In re Schering-Plough Corp. ERISA Litig.*,
2007 WL 2374989 (D.N.J. Aug. 15, 2007) ..............................................28

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991).....................................................................6

*Kentucky Ass'n of Health Plans Inc. v. Miller*,
538 U.S. 329 (2003) ...................................................................................15, 16

*Levine v. United Healthcare Corp.*,
402 F.3d 156 (3d Cir. 2005).................................................................................15

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.*,
48 F.3d 742 (3d Cir. 1995)....................................................................................7

*Lincoln Ben. Life Co. v. AEI Life, LLC, et al.*,
800 F.3d 99 (3d Cir. 2015) ....................................................................................7

*McGee v. Cont'l Tire N. Am., Inc.*,
2007 U.S. Dist. LEXIS 62869 (D.N.J. Aug. 27, 2007) .........................................37

*McKelvey v. Pierce*,
173 N.J. 26 (2002)..............................................................................................33

*MHA, LLC v. Aetna Health, Inc.*,
No. 122984, 2013 WL 705612 (D.N.J. Feb. 25, 2013) ............................................9

*Middlesex Surgery Ctr. v. Horizon*,
2013 U.S. Dist. LEXIS 27542 (D.N.J. Feb. 28, 2013) ...........................................17

*Miller v. American Airlines, Inc.*,
632 F.3d 837 (3d Cir. 2011)................................................................................30

*New Jersey Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J.*,
No. A-4449-10T1, 2011 N.J. Super. Unpub. LEXIS 3076
(App. Div. Dec. 20, 2011)...............................................................................13, 14

*Neurosurgical Assoc. of NJ, P.C. v. QualCare Inc.*,
2015 WL 4569792 (D.N.J. July 28, 2015)............................................................28

*North Jersey Brain & Spine Center v. Aetna, Inc.*,
801 F.3d 369 (3d Cir. 2015).............................................. 8, 9, 10, 11, 12, 14, 15, 17

*North Jersey Brain & Spine v. Conn. Gen. Life*,
2011 WL 4737067 (D.N.J. June 30, 2011) ...........................................................13

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plant*,
388 F.3d 393 (3d Cir. 2004).......................................................................8

*Peterson v. UnitedHealth Group, Inc., et al.*,
No. 14-cv-2101 slip op. (D. Minn. March 14, 2017)............................................1, 2

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008).......................................................................7

*Prakash v. American Univ.*,
727 F.2d 1174 (D.C.Cir.1984) ....................................................................7

*Premier Health Ctr., P.C. v. UnitedHealth Group*,
2014 WL 4271970 (D.N.J. Aug. 28, 2014) ........................................................20

*Premier Health Ctr., P.C. v. UnitedHealth Group*,
 292 F.R.D. 204 (D.N.J. 2013)....................................................................27

*Premier Health Ctr., P.C. v. UnitedHealth Group*,
No. 11-425(ES), 2012 WL 1135608 (D.N.J. Apr. 4, 2012) .......................................6, 12, 16

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014).......................................................................36

*Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*,
No. 10-81859-CIV, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013) ....................................23, 24

*Seidenberg v. Summit Bank*,
348 N.J. Super. 243 (App. Div. 2002) .............................................................32

*Sons of Thunder v. Borden, Inc.*,
148 N.J. 396 (1997)..............................................................................32

*Storino v. Borough of Point Pleasant Beach*,
322 F.3d 293 (3d Cir. 2003).......................................................................6

*Texas Gen. Hosp., LP v. United Healthcare Serv's, Inc.*,
No. 3:15-CV-02096-M, 2016 WL 3541828 (N.D. Tex. June 28, 2016)................................25

*Toll Bros., Inc. v. Board of Chosen Freeholders of County of Burlington*,
194 N.J. 223 (2008)...................................................................................34

*UNUM Life Ins. Co. of Am. v. Zaun*,
Civil No. 13-1214 (MJD/TNL),
2014 WL 3630340 (D. Minn. May 29, 2014) ........................................20

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)..................................................................................30

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................6

*Weldon v. Kraft*,
896 F.2d 793 (3d Cir.1990)......................................................................21

*WR Huff Asset Mgt. Co. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)...............................................................11, 12

## **STATUTES**

29 U.S.C. § 1001 *et seq.*..............................................................................2

29 U.S.C. § 1001(b) ....................................................................................9

29 U.S.C. § 1104 .......................................................................................28

29 U.S.C. § 1132(a)(1)(B) ....................................................................23, 27

29 U.S.C. § 1132(a)(3)...............................................................................30

29 U.S.C. § 1133(2) ..............................................................................21, 29

29 U.S.C. § 1144(a) ...................................................................................15

29 U.S.C. § 1144(b) ...................................................................................16

29 U.S.C. § 1144(b)(2)(A) .........................................................................15

29 U.S.C. § 1144(b)(2)(B) .........................................................................15

28 U.S.C. § 2201(a) ................................................................................37

*N.J.S.A.* 26:2S-6.1(c) ........................................................................13, 15

*N.J.S.A.* 56:8–2 ...................................................................................39

## **REGULATIONS**

29 C.F.R. 2650.503-1 ..........................................................................21

29 C.F.R. 2650.503-1(f) ......................................................................21

29 C.F.R. 2650.503-1(g) ......................................................................21

29 C.F.R. 2560.503-1(g)(1) ..................................................................30

## **RULES**

Fed. R. Civ. P. 8(d)(3) .........................................................................36

Fed. R. Civ. P. 9(b) .............................................................................39

Fed. R. Civ. P. 12(b)(1) ................................................................6, 8, 18

Fed. R. Civ. P. 12(b)(6) ................................................................6, 7, 8

## PRELIMINARY STATEMENT

In sensational language, Defendants United HealthCare Services, Inc. ("UHS"), OptumInsight, Inc. ("Optum"), and UnitedHealth Group, Inc. ("UHG") (collectively, "United" or "Defendants") make misleading and, for purposes of this motion, irrelevant allegations regarding the "charge-to-cost" ratios of Plaintiffs IJKG, LLC, IJKG PROPCO LLC and IJKG OPCO LLC d/b/a CarePoint Health – Bayonne Medical Center ("BMC"), Hudson Hospital OPCO LLC d/b/a CarePoint Health – Christ Hospital ("CH"), and HUMC OPCO LLC d/b/a CarePoint Health – Hoboken University Medical Center ("HUMC") (collectively, "Plaintiffs" or the "CarePoint Hospitals").  The reality, as sufficiently pleaded in the Amended Complaint, is that this case concerns Defendants' deceptive practice of paying Plaintiffs in full for the medically necessary treatment they provided to patients insured by Defendants ("Subscribers"); and then, many months, and in some cases years later, making improper repayment demands and unauthorized attempts to recoup nearly $2 million related to these claims.  Some of Defendants' improper actions were addressed in *Peterson v. UnitedHealth Group, Inc., et al.*, No. 14-cv-2101 slip op. (D. Minn. March 14, 2017), in which the Court found that Defendants' plans did not permit their practice of "cross-plan offsetting," by which they "withhold some or all of their payments in order to offset overpayments that United claims to have made to the providers in connection with their treatment of

different patients enrolled in different plans."  In disapproving of this practice, the *Peterson* Court noted that "[w]hen United and a provider dispute whether a claim was overpaid, cross-plan offsetting allows United to act as judge, jury and executioner."  *Id* at 7.  The Court added that United implemented this practice without examining the language of any plan, and "[o]nly after getting sued did United hunt through the plans for any language that might provide a post hoc justification for its conduct."  *Id.* at 18.  But "United was not able to find a single provision of a single plan that explicitly authorizes cross-plan offsetting."  *Id.*

The same improper "cross-plan offsetting" practice drives this action.  As shown in the Amended Complaint, commencing in 2015, Defendants began asserting post hoc justifications for their claims that they allegedly overpaid Plaintiffs for $1,919,315.64 for treatment that these hospitals provided to hundreds of Subscribers months and in some cases years earlier.  Defendants then began to offset the amounts they allegedly overpaid Plaintiffs against subsequent claims for treatment Plaintiffs provided to different patients.  To date, Defendants have offset at least $1,042,015.87 against the CarePoint Hospitals' claims in this manner.  Defendants' improper recoupment practices violate the plans and policies of insurance covering Defendants' Subscribers ("Plans").  Accordingly, the CarePoint Hospitals, as the Subscribers' assignees, bring this action against Defendants under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et*

*seq.*, or alternatively, state law, based on Defendants' failure to pay required Plan benefits or comply with other legal duties.

Defendants contend that Plaintiffs do not sufficiently plead that they have valid assignments of benefits ("AOBs") giving them standing to sue Defendants under ERISA, but the form and content of the AOBs are entirely proper under controlling Third Circuit precedent.  Defendants claim that Plaintiffs fail to plead that they have exhausted Plan remedies, but the Amended Complaint sufficiently details the CarePoint Hospitals' extensive efforts to exhaust all known Plan remedies, and it also demonstrates that further exhaustion would be futile. Defendants assert that Plaintiffs s do not sufficiently plead the terms of the applicable Plans, but the allegations of the Amended Complaint detailing the Plan terms completely belie this assertion.  Finally, Defendants claim that Plaintiffs' state law claims are insufficient, but the Amended Complaint plausibly alleges viable state law theories as alternatives to their ERISA claims.  For these reasons and others, discussed more fully below, Defendants' motion to dismiss (ECF No. 34) ("Motion") must be denied in its entirety.

## OVERVIEW OF THE CAREPOINT HOSPITALS' CLAIMS

The allegations of the Amended Complaint, which must be accepted as true for purposes of this motion, demonstrate that Plaintiffs are three affiliated acute care hospitals that have fallen victim to Defendants' unscrupulous practices.

Between approximately July 26, 2010, and October 2, 2015, Plaintiffs treated approximately 433 United Subscribers at the CarePoint Hospitals for which United later sought recoupment ("United Recoupment Subscribers") and accordingly billed Defendants for the medical services provided to these United Subscribers. Defendants paid these claims without question. *See* Amended Complaint (ECF No. 25) ("Am. Compl."), at ¶¶6, 91-92. Then, starting in or around August 2015, Defendants began to send Plaintiffs "final" recoupment demand letters for claims related to these 433 United Recoupment Subscribers. *Id., ¶*7, 67. Curiously, Defendants never sent Plaintiffs the "initial" recoupment demand letters for those claims. *Id., ¶¶*7, 71-73. Thus, by correspondence dated October 5, 2015, and November 9, 2015, Plaintiffs requested that Defendants identify all of the claims for which Defendants demanded reimbursements. *Id., ¶¶*8, 71-77.

In response, Defendants provided the CarePoint Hospitals with spreadsheets by which they purported to demand repayment for alleged overpayments related to these 433 claims in the amount of $2,271,412.35. *Id., ¶¶*9,74, 77. In some cases, the recoupment demands were made months or even years after the CarePoint Hospitals provided treatment to Defendants' subscribers. *Id., ¶*9, 16.

As demonstrated in the Amended Complaint, the CarePoint Hospitals, as assignees of United Subscribers, have fully exhausted all administrative remedies that Defendants have made available to them. *Id., ¶¶*12, 94-103. Among other

things, they have appealed Defendants' recoupment determinations, even where Defendants failed to provide timely or accurate information to Plaintiffs, and sought additional information from Defendants in an effort to resolve Defendants' improper recoupment demands. *Id., ¶¶12, 67-88, 94-103.* Plaintiffs have no further appeal avenues available to them and, in any event, further exhaustion efforts would be futile. *Id.*

Importantly, after Plaintiffs appealed, Defendants withdrew their demands for recoupment for a mere 10 of the 433 United Recoupment Subscribers, totaling $352,096.71 in payments. *Id., ¶13, 79.* However, Plaintiffs' appeals were otherwise unsuccessful, as Defendants refused to withdraw their remaining recoupment demands, leaving a total of 423 claims for which Defendants have demanded recoupment from Plaintiffs, in the amount of $1,919,315.64. *Id., ¶¶13, 79-88, 94-103.* Even worse, of that $1,919,315.64, Defendants have already offset post-October 2015 claims in the amount of $1,042,015.87. *Id., ¶14, 78.* Defendants have failed to provide Plaintiffs with a meaningful avenue for further review of their recoupment demands. Among other things, Defendants: (i) fail to adequately explain the basis for their demands; (ii) fail to sufficiently explain how Plaintiffs can appeal these demands; (iii) do not afford Plaintiffs sufficient time to appeal these demands, and (iv) otherwise fail to provide Plaintiffs with proper notice and opportunity for a full and fair review. *Id., ¶15, 102.*

## LEGAL ARGUMENT

### I.    Standards of Review

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1), purportedly for lack of standing, and under Fed. R. Civ. P. 12(b)(6), purportedly for failure to state a claim upon which relief may be granted.  Curiously, however, Defendants fail to recite the standards applicable to motions for dismissal under these rules.  Where, as here, Defendants assert a facial challenge to the District Court's subject matter jurisdiction under Rule 12(b)(1), the Court "consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000); *Premier Health Ctr., P.C. v. UnitedHealth Group*, No. 11-425(ES), 2012 WL 1135608, at *3 (D.N.J. Apr. 4, 2012) ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.") (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). Dismissal is proper under a facial Rule 12(b)(1) attack only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell*

*v. Hood*, 327 U.S. 678, 682 (1946)).[1]

Similarly, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes the complaint in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Complaint need only allege enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 556.

Here, Defendants' facial challenge to this Court's subject matter jurisdiction

---

[1] A facial attack on subject matter jurisdiction challenges the sufficiency of the pleadings, accepting the Plaintiff's allegations as true. *Focus v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996). In a factual attack, "[t]he Court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and then the Court must decide the jurisdictional issue by weighing the evidence." *Lincoln Ben. Life Co. v. AEI Life, LLC, et al.*, 800 F.3d 99, 105 (3d Cir. 2015). The instant Motion raises only a facial attack because Defendants rely solely on the Amended Complaint and the benefit plans and correspondence cited therein. *See Gould*, 220 F.3d at 176. To the extent that Defendants purport to raise a factual attack, it is inappropriate before any discovery has taken place. *Cf. Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995) ("The court must … afford the nonmoving party 'an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'") (quoting *Prakash v. American Univ.*, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984)).

under Rule 12(b)(1) fails because, as shown in Part II, *infra*, the CarePoint Hospitals sufficiently plead that they have standing as assignees of Defendants' Subscribers. Defendants' attack on the sufficiency of the Amended Complaint under Rule 12(b)(6) likewise fails because, as shown in Parts III and IV, *infra*, the CarePoint Hospitals otherwise plead viable ERISA and state law claims. Thus, Defendants' motion to dismiss must be denied.

## II.     Plaintiffs Have Standing As Assignees Of The United Subscribers

### A.     ERISA Plan Benefits May be Assigned to a Health Care Provider

At the outset, it is well-established that benefits under an ERISA plan are assignable to a health care provider. ERISA Section 502(a) provides that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan." *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (quoting *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plant*, 388 F.3d 393, 400 (3d Cir. 2004)). While a healthcare provider does not have direct standing to bring a claim for benefits under ERISA, every Court of Appeals that has addressed the issue, including the Third Circuit, has recognized that a valid AOB confers upon a healthcare provider derivative standing under ERISA. *North Jersey Brain & Spine*, 801 F.3d at 372-73. The Third Circuit explained that recognizing that a provider may sue to enforce a claim under ERISA under a valid assignment of

benefits is guided by Congress's intent that ERISA "protect ... the interests of participants in employee benefit plans (29 U.S.C. § 1001(b)), and that the assignment of ERISA claims to providers "serves the interests of patients by increase in their access to care." *North Jersey Brain & Spine*, 801 F.3d at 373 (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 179 (3d Cir. 2014)).

### B.     Plaintiffs Sufficiently Plead Standing under the Plans

Defendants nonetheless argue that Plaintiffs lack standing to sue them under the Plans.  Relying on *MHA, LLC v. Aetna Health, Inc.,* No. 122984, 2013 WL 705612 (D.N.J. Feb. 25, 2013), Defendants argue that the assignments Plaintiffs allege are insufficient because they purportedly fail to reflect an "unequivocal expression of an intent to transfer" the Subscribers' rights under the Plan.  (Motion at 9-10) (citing *MHA*, 2013 WL 705612, at *7).  This reliance is misplaced, because *MHA* has been expressly overruled by the Third Circuit in *North Jersey Brain & Spine*, *see* 801 F.3d at 371 n.1, which, alarmingly, Defendants fail to cite anywhere in their brief.  In *MHA*, the Court distinguished between "an assignment of a right to payment and an assignment of plan benefits," and held that "only the latter that creates derivative standing in a provider assignee to sue under § 502." *MHA*, 2013 WL 705612, at *7.  In rejecting this view, the Third Circuit in *North Jersey Brain & Spine* held that an "[a]n assignment of the right to payment logically entails the right to sue for non-payment."  801 F.3d at 372.  The Court

continued, "[a]fter all, the assignment is only as good as payment if the provider can enforce it." *Id.* at 373. Thus, the *North Jersey Brain & Spine* Court concluded that "an assignment of the right to payment is sufficient to confer standing to sue for payment under ERISA § 502(a)(1)." 801 F.3d at 374.

Here, the assignment language cited by Plaintiffs is more than sufficient under *North Jersey Brain & Spine.* The assignments broadly assign to Plaintiffs all "rights, benefits, privileges, protections, claims, causes of action, interests or recovery" arising out of "any policy of insurance, plan, trust, fund, or otherwise providing health care coverage of any type to me (or to any other third party responsible for me) for the charges for services rendered to me by the hospital." Am. Compl. ¶¶51, 52. The assignments also "authorize and direct payment be made by any and all coverage source directly to the Hospital" of all benefits payable under the Plans. Am. Compl. ¶53. Thus, these assignments more than fully transfer to Plaintiffs the Subscribers' right to payment under the Plans, which is sufficient to confer standing. *See North Jersey Brain & Spine*, 801 F.3d at 374.

Defendants argue that the assignments are insufficient because they separately designate the CarePoint Hospitals as the Subscribers' "authorized representatives" with respect to the Subscribers' rights under the Plans. (Motion at 9-10). Defendants maintain that the language of CarePoint's assignment forms thus "paradoxically purports to both transfer and not transfer the same rights."

(Motion at 10).  This seriously misconstrues the language of the assignment forms. The "authorized representative" section merely designates the applicable CarePoint Hospital as the Subscriber's authorized representative related to "all of [the Subscriber's] rights, benefits, privileges, protections, causes of action, interests or recovery" arising under the Plan.  Am. Compl. ¶54.  It in no way undercuts the Subscriber's assignment of his or her "rights, benefits, privileges, protections, claims, causes of action, interests or recovery" arising under the Plan.  *See* Am. Compl. ¶¶51, 52.  Notably, in *North Jersey Brain & Spine*, just as in this case, the assignment forms similarly authorized the health care provider "to appeal to my insurance company on my behalf," while it also assigned to the provider "all payments for medical services rendered to myself or my dependents." 801 F.3d at 370-71.  The Court did not cite any inconsistency between these two clauses.  *See id.*  Of course, the assignments at issue here separately convey to the CarePoint Hospitals the right to payment of Plan benefits, Am. Compl. ¶53, which is alone sufficient under *North Jersey Brain & Spine.  See* 801 F.3d at 374.

Defendants further argue that the assignments do not permit Plaintiff to sue in their own name.  (Motion at 10).  The cases Defendants cite for this proposition do not support its argument.  In *WR Huff Asset Mgt. Co. v. Deloitte & Touche LLP*,

549 F.3d 100 (2d Cir. 2008),[2] the plaintiff lacked standing because it merely alleged that it was "empowered by powers of attorney" to bring a lawsuit "in its representative capacity," not that the assignors had transferred ownership of, or title to, their claims to the plaintiff. *Huff*, 549 F.3d at 109.  Here, by contrast, the Subscribers fully assigned to the CarePoint Hospitals all of their "rights, benefits, privileges, protections, claims, causes of action, interests or recovery" arising under the Plans.  *See* Am. Compl. ¶¶51, 52.  And in *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1145 (C.D. Cal. 2015), the Court merely noted that an assignment of benefits is not sufficient to designate a health care provider as an authorized representative.  *Almont*, 99 F. Supp. 3d at 1144.  It did not hold that designating a provider as an authorized representative would invalidate the assignment, as Defendants suggest. *See id.* at 1144-45.  In any event, under controlling Third Circuit case law, an assignment of the right to payment is alone enough to confer standing under ERISA § 502(a)(1).  *North Jersey Brain & Spine*, 801 F.3d at 374.  The assignments at issue in this case more than satisfy this requirement.  Am. Compl. ¶¶51, 52, 53.[3]

---

[2] Defendants wrongly cite *Huff* as a Third Circuit case.  (Motion at 10).  It is a Second Circuit case.

[3] Defendants fault Plaintiffs for not attaching the full texts of their assignments of benefits to the Amended Complaint.  (Motion at 9).  No such pleading requirement exists.  *See Premier Health*, 2012 WL 1135608 at *6-7 (holding that by quoting the assignment language, the Plaintiffs carried their pleading burden, and that it

### C.      Alleged Anti-Assignment Clauses Do Not Foreclose Plaintiffs' Claims

Defendants further challenge Plaintiffs' standing purportedly on the ground that the Plans applicable to two specific patients (identified in the Amended Complaint as Patients 1 and 2) contain anti-assignment clauses.  (Motion at 11). Defendants' reliance on these alleged anti-assignment clauses is wholly misplaced.

### 1.      Anti-assignment clauses are unenforceable in New Jersey

At the outset, the alleged anti-assignment clauses are unenforceable because they conflict with a 2011 New Jersey statute that provides, in relevant part, that "in the event that the covered person assigns, through an assignment of benefits, his right to receive medically necessary health care services to an out-of-network health care provider, the carrier shall remit payment for the reimbursement directly to the health care provider." *N.J.S.A.* 26:2S-6.1(c) (emphasis added).  As the New Jersey Appellate Division has stated, "[a] fair reading of *N.J.S.A.* 26:2S-6.1(c) suggests that anti-assignment clauses in medical plans may not be enforced as a general matter."  *New Jersey Dental Ass'n v. Horizon Blue Cross Blue Shield of*

---

was not necessary to attach actual copies of assignments); *North Jersey Brain & Spine v. Conn. Gen. Life*, 2011 WL 4737067 at *5-6 (D.N.J. June 30, 2011) (finding that an allegation reciting an assignment of "all payments for medical services rendered" was adequate); *Exact Sciences Corp. v. Blue Cross Blue Shield of North Carolina*, 1:16CV125, 2017 WL 1155807, at *6 (M.D.N.C. Mar. 27, 2017) (plaintiff plausibly alleged derivative standing to pursue its ERISA claims by citing to language from three representative AOBs signed by Exact's patients and pleading that Defendant's subscribers "'assign to Exact their right to receive benefits and challenge benefit denials under the applicable Plans'").

*N.J.*, No. A-4449-10T1, 2011 N.J. Super. Unpub. LEXIS 3076, * 7 (App. Div. Dec. 20, 2011).[4]

In seeking to avoid the import of this statute, Defendants rely on *Advanced Orthopedics & Sports v. BCBS of Mass.*, Civ. NO. 14-7280 FLW, 2015 U.S. Dist. LEXIS 93855 (D.N.J. July 20, 2015). There, the Court declined to find that this statute invalidates anti-assignment clauses, reasoning that "[o]n its face, this statute merely regulates the method of payment when an assignment of benefits occurs." *Id.*, *9. But not only does *Advanced Orthopedics* conflict with the Appellate Division's conclusion in *New Jersey Dental Ass'n*, it conflicts with the policies underlying the Third Circuit's subsequent holding in *North Jersey Brain & Spine*. There, the Court recognized that the value of assignments under ERISA "lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front." *North Jersey Brain & Spine*, 801 F.3d at 373. Further, "[p]atients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims." *Id.* (citing *Hermann Hosp. v. MEBA Med. & Benefits*

---

[4] The court in *New Jersey Dental Ass'n* held that this statute did not bar anti-assignment clauses under the facts of that case because another statute, N.J.S.A. 17:48E-10.2, specifically permitted anti-assignment clauses in the stand-alone dental plans at issue in that case. 2011 N.J. Super. Unpub. LEXIS 3076, *7. The Plans at issue here, however, are not stand-alone dental plans.

*Plan*, 845 F.2d 1286, 1289 n. 13 (5th Cir.1988)).  A holding that *N.J.S.A.* 26:2S-6.1(c) invalidates anti-assignment clauses by requiring insurers to honor assignments advances the policies underlying *North Jersey Brain & Spine.*

Defendants further argue that *N.J.S.A.* 26:2S-6.1(c) is preempted by ERISA. (Motion at 13).  Although ERISA does preempt state laws relating to employee benefit plans, *see* 29 U.S.C. § 1144(a), it excludes state laws that "regulate insurance, banking, or securities" from the scope of its express preemption clause, *see* 29 U.S.C. § 1144(b)(2)(A), other than self-funded employee benefit plans.  29 U.S.C. § 1144(b)(2)(B).  A state law regulates insurance if it is (1) "'specifically directed towards entities engaged in insurance," and (2) "substantially affect the risk pooling arrangement between the insurer and the insured.'"  *Levine v. United Healthcare Corp.*, 402 F.3d 156, 164-65 (3d Cir. 2005) (citing *Kentucky Ass'n of Health Plans Inc. v. Miller*, 538 U.S. 329, 341-42 (2003)). *N.J.S.A.* 26:2S-6.1(c) satisfies both requirements and thus, is excluded from ERISA preemption.  By its terms, it is addressed to "carriers" – *i.e.*, insurance companies – that offer managed care plans providing in-network and out-of-network benefits.  *N.J.S.A.* 26:2S-6.1(c).  Thus, it is addressed to entities engaged in insurance.  Moreover, by invalidating anti-assignment clauses in health insurance plans, *N.J.S.A.* 26:2S-6.1(c) expands the number of providers that may assert valid claims for reimbursement against the insurance companies, and thus, substantially affects the

risk pooling agreement between insurer and insured. *Cf. Miller*, 538 U.S. at 338-39 (state statute prohibiting health insurer from discriminating against provider willing to meet insurer's conditions for participation affects risk pooling arrangements "[b]y expanding the number of providers from whom an insured may receive health services"). Since the purported anti-assignment clauses here are invalid as a matter of New Jersey law, they cannot deprive Plaintiffs of standing to under ERISA other than claims arising exclusively under self-funded employee benefit plans. 29 U.S.C. § 1144(b).

> **2.    Even if anti-assignment clauses were enforceable, the CarePoint Hospitals have sufficiently pled waiver**

Moreover, even if anti-assignment clauses were enforceable as a general matter, Defendants have waived them in this case. This Court has recognized that anti-assignment clauses in ERISA plans can be waived by a course of business dealing. *See, e.g., Premier Health Ctr.*, 2012 WL 1135608, at *28 ("the Court finds that based upon Defendants' course of conduct with Plaintiffs, Defendants have waived any right to enforce the anti-assignment provision"); *Gregory Surgical v. Horizon Blue Cross Blue Shield of New Jersey*, 2007 WL 4570323, at *4 (Dec. 26, 2007) (course of dealing including "regular interaction between [insurer] and [provider] prior to and after claim forms are submitted, without mention of [insurer's] invocation of the anti-assignment clause," prevented defendant from relying on anti-assignment provisions to challenge plaintiff's

- 16 -

standing under ERISA); *Ambulatory Surgical Center of N.J. v. Horizon Healthcare Servs., Inc.*, No. 07–2538 (SDW), 2008 WL 8874292, at \*3 (Feb. 21, 2008) (describing "an extensive course of dealings with [the insurer] that constitute[d] a waiver of the anti-assignment provision and estop[ped] [the insurer] from disavowing" plaintiff's standing to pursue ERISA claims based on these assignment of benefits).

Here, Defendants waived the alleged anti-assignment clauses through an extended course of dealing.  Am. Compl. ¶57.  As to Patient 1, Defendants' course of dealing included, among other things, accepting and processing three appeals, and exchanging numerous e-mails directly with Plaintiffs' representatives.  *Id.*, ¶¶59, 68-71.  Moreover, the Plan for Patient 1 expressly gives the Subscriber the right to direct payments due under the Plan to the healthcare provider.  *Id.*, ¶59.  Through their extended course of dealing, Defendants have waived their anti-assignment clauses in the Plans applicable to Patients 1 and 2 as a matter of law.[5]

Defendants' reliance on *Middlesex Surgery Ctr. v. Horizon*, 2013 U.S. Dist. LEXIS 27542, at \*13 (D.N.J. Feb. 28, 2013 (Motion at 13), is misplaced, as that

---

[5] Defendants also argue that an "anti-waiver" clause in Patient 1's Plan invalidates any course of dealing argument asserted by the CarePoint Hospitals.  Defendants, however, cite no case law in support of this contention.  Moreover, an anti-waiver clause that prohibits the CarePoint Hospitals' right to enforce a claim for underpayment of benefits under an ERISA Plan based on consent to payment by Defendants to the CarePoint Hospitals through their course of dealing is inconsistent with the policies underlying *North Jersey Brain & Spine*.

case does not even address anti-assignment language.  Instead, it addresses a Fed. R. Civ. P. 12(b)(1) challenge related to whether a patient's assignment of her right to "appeal" a claim contained a valid assignment that conferred derivative standing under ERISA.  *Id.* at *5-12.

Equally misplaced is Defendants' reliance on *Advanced Orthopedics.* (Motion at 13).  There, the Court found that a pleading of direct reimbursement, standing alone, was insufficient to demonstrate a course of dealing that amounted to a waiver of an anti-assignment clause.  *Advanced Orthopedics,* 2015 U.S. Dist. LEXIS 93855, at *15. But here, Plaintiffs have pled a course of dealing far more extensive than direct reimbursement.  Among other things, when they decide to pay a claim, Defendants remit payment directly to the CarePoint Hospitals, without reliance on any anti-assignment clauses; and then demand reimbursements, thus forcing the CarePoint Hospitals to pursue Defendants' internal appeals process and improper post-audit processes, only to frustrate the CarePoint Hospitals when they pursue these processes.  *Id., ¶*58.  This course of conduct is inconsistent with Defendants' alleged anti-assignment provisions in its Plans.  At a minimum, whether Defendants have acted in a manner consistent with their alleged anti-assignment provisions is a fact-sensitive inquiry that must await further discovery.  Thus, Defendants may not now rely on anti-assignment clauses in two of its Plans to defeat Plaintiffs' claims at the pleading stage.

### 3. Dismissal based on purported anti-assignment clauses for "other later-identified patients with similar plan language" is premature

Defendants' reliance on their purported anti-assignment clauses as a basis for dismissal of additional claims with "similar" plan language fails for the additional reason that Defendants have not come forward with a single anti-assignment clause beyond those cited in the Plans covering Patients 1 and 2. Importantly, Defendants ignore two other Plan documents attached to the Amended Complaint that contain no anti-assignment clauses.  Am. Compl., Exs. E and P.  The Plan attached as Exhibit E expressly permits assignment of benefits to a provider such as the CarePoint Hospitals and states:  "UnitedHealthcare will pay Benefits to you unless ... the provider notifies UnitedHealthcare that you have provided signed authorization to assign Benefits directly to that provider…."  Am. Compl., Ex. E at 65.  In *Exact Sciences*, the Court rejected the insurer's reliance on "sample" anti-assignment clauses as a basis for dismissal at the pleading stage. The Court reasoned that because the anti-assignment clauses were admittedly only samples, and because discovery had not yet commenced, reliance on the samples would be inappropriate. 2017 WL 1155807, *4.  The same reasoning applies here. Defendants cannot rely on two alleged anti-assignment clauses as a basis for dismissal of Plaintiffs' claims at the pleading stage, before Plaintiffs have had the opportunity to obtain discovery regarding the terms of each of the Plans at issue.

- 19 -

### III.   Plaintiffs Plead Viable ERISA Claims

#### A.   Plaintiffs Sufficiently Allege that They Exhausted Plan Remedies and that Further Exhaustion would be Futile

Moreover, and contrary to Defendants' contention (Motion at 14-17), Plaintiffs sufficiently plead that they exhausted all available remedies under the applicable Plans and that further exhaustion would be futile.  As a threshold matter, Defendants assert that Plaintiffs have not exhausted ERISA remedies because Defendants' recoupment demands do not constitute "adverse benefit determination." (Motion at 15).  The weight of authority, including from this Court, is to the contrary.  *See Premier Health Ctr., P.C. v. UnitedHealth Group*, 2014 WL 4271970, at *29 (D.N.J. Aug. 28, 2014) (holding that "any and all repayment demands constitute ABDs under ERISA and therefore must comply with ERISA's notice and appeal requirements"); *accord UNUM Life Ins. Co. of Am. v. Zaun*, Civil No. 13-1214 (MJD/TNL), 2014 WL 3630340, at *6, 7 (D. Minn. May 29, 2014) (letter to enrollee seeking payment for alleged overpayment was an adverse benefit determination); *Blue Cross & Blue Shield of Rhode Island v. Korsen*, 945 F. Supp. 2d 268, 282–83 (D.R.I. 2013) (insurer's repayment demand entitled in-network providers to ERISA's procedural protections); *Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1036 n.1 (N.D.Cal. 2004) (insurer's claim for reimbursement is an adverse benefit determination that triggers ERISA's procedural protections).   Accordingly,

- 20 -

Defendants' recoupment demands constitute adverse benefits determinations.

Further, Plaintiffs sufficiently plead that they exhausted all available remedies under the Plans and that further exhaustion would be futile.  While an ERISA Plan participant ordinarily must exhaust available remedies under the Plan before filing suit, the exhaustion requirement is excused if administrative remedies available under the plan before seeking relief in federal court if the participant can demonstrate that resort to the plan remedies would be futile. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249-51 (3d Cir.2002); *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir.1990).  Importantly, ERISA Section 503 requires every employee benefit plan, *inter alia*, to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  Moreover, the accompanying regulations at 29 C.F.R. 2650.503-1 set forth a number of requirements to establish "reasonable claims procedures" in determining claims for benefits.  *See, e.g., id.* at 2650.503-1(f) (written notice of benefit determination must be provided within ninety (90) days), 2650.503-1(g) (the plan administrator shall provide a "written or electronic notification of any adverse benefit determination" stating the "specific reason or reasons for the adverse determination").  A Plan's failure to "establish" or "follow" reasonable claims procedures as set forth by 2650.503-1 means that a "claimant shall be

deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies" under ERISA section 502(a).

Here, Plaintiffs allege, among other things, that they appealed Defendants' recoupment determinations (even where Defendants unlawfully failed to provide timely or accurate information to the CarePoint Hospitals to inform them of how to appeal) and sought additional information from Defendants in an effort to resolve Defendants' improper recoupment demands.  Am. Compl. ¶¶12, 94.  Not only were such efforts largely unsuccessful, but they resulted in additional recoupment demands from Defendants.   Am. Compl. ¶¶72-78, 95-99.   In the course of Plaintiffs' appeals and subsequent informal attempts to resolve this dispute with Defendants, Defendants withdrew their demands for recoupment for a mere 10 of the 433 United Recoupment Subscribers.  *Id.,* ¶13, 79. [6] However, Defendants have otherwise refused to reconsider their position as to the remaining 423 claims, and in fact, have already offset post-October 2015 CarePoint Hospital claims in the amount of $1,042,015.87.  *Id.,* ¶14, 78.  Making matters even worse, there is no other meaningful avenue for further review of Defendants' recoupment demands

---

[6] Defendants wrongly argue that its withdrawal of 10 of the recoupment demands originally sought establishes that the CarePoint Hospitals failed to exhaust its available appeals remedies.  To the contrary, Defendants' withdrawal of these 10 claims (while failing to withdraw another $1,079,943 worth of recoupment demands for which the third-party "audit" determinations specified the exact same basis for recoupment as the 10 withdrawn claims) merely demonstrates United's arbitrary application of manufacturing bases to improperly demand recoupments.

and recoupments, given Defendants' failure to adequately explain the basis for their demands or otherwise afford Plaintiffs with proper notice and an opportunity for a full and fair review.  *Id.,* ¶15, 102.  Under these circumstances, Plaintiffs more than sufficiently plead that they have exhausted all available Plan remedies, and that further exhaustion would be futile.

### B.    Plaintiffs Sufficiently Plead Plan Terms

Plaintiffs otherwise satisfy the pleading requirements for their denial of benefits claim in Count One under 29 U.S.C. § 1132(a)(1)(B). Defendants allege that the Amended Complaint does not sufficiently identify the specific Plan terms that the CarePoint Hospitals allege were violated.  (Motion at 17-18).  Defendants rely for this argument primarily on two cases, *Broad St. Surgical Ctr., LLC*, 2012 U.S. Dist. LEXIS 30466 (D.N.J. March 6, 2012), and *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81859-CIV, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013).  This reliance is misplaced.  In *Broad St.*, the plaintiff, an out-of-network health insurance provider, sought payment for medical services provided to the insurer's subscribers.  There, the plaintiffs pleaded facts from four of the thirteen ERISA plans at issue, without attaching any of the plans, and made general allegations that the defendant insurer refused to provide the rest of the requested plans.  2012 U.S. Dist. LEXIS 30466, *37.  The Court found this insufficient, *inter alia*, because the plaintiff's allegations "do not establish, or even address, whether

pain injections are a covered benefit under the plan or how pain injections relate to outpatient surgery." *Id.* at \*39. Similarly, in *Sanctuary Surgical*, the plaintiffs attached to their pleadings summaries of six plans, and made general allegations that 300 other plans at issue contained "similar" coverage language. However, their allegations "[did] not establish, or even address, whether [manipulations under anesthesia known as] MUAs are a covered benefit under the cited exemplar plans or how MUAs fall within the definition of 'medically necessary' treatment under any of those plans." 2013 WL 149356, at \*5, 6.

Here, unlike in *Broad St.* or *Sanctuary Surgical*, Plaintiffs plausibly allege that: upon information and belief, the Plans require United to reimburse the CarePoint Hospitals for their total billed charges, less applicable in-network patient responsibility, for emergency/urgent care that the CarePoint Hospitals provide to United Subscribers; the Plans required United to reimburse the CarePoint Hospitals for elective care provided to United Subscribers at the usual, customary and reasonable rates and that the United Subscriber is responsible for the balance; and that the Plans permit assignments of benefits. *See* Am. Compl. ¶¶36, 38, 56-60. Numerous courts have found similar allegations are sufficient. *See*, *e.g.*, *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. H-15-0297, 2015 WL 3756492, at \* 4 (S.D. Tex. June 16, 2015) (health care provider sufficiently alleged the specific plan terms that conferred the benefits in question where plaintiffs

alleged that "the plan terms 'allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates,'" and that the insurer "made reimbursement at drastically reduced rates," since the plaintiff "adequately identifies the plan terms which Plaintiff asserts confers the benefits it seeks to recover under § 502."); *accord Texas Gen. Hosp., LP v. United Healthcare Serv's, Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, * 4 (N.D. Tex. June 28, 2016) (finding similar allegations "sufficient to state a plausible claim for recovery of benefits under ERISA § 502(a)(1)(B)"); *Almont Ambulatory Surgery Ctr*, 99 F. Supp. 3d at 1159 (for a health care provider to state an ERISA claim against an insurer, the provider must allege that "the terms of the plan: (1) provide coverage for each of the procedures at issue in this case; and (2) dictate that these covered services would be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by outpatient surgical centers), which must be specified"; and further noting that allegations concerning plan terms may be made "on information and belief.").

Defendants further assert that "all four plans attached to the Amended Complaint specifically advise patients that they do ***not*** reimburse based on an out-of-network provider's billed rates."  (Motion at 20-21).  At best, this assertion mischaracterizes the terms of the actual plans, and Plaintiffs' allegations.  Plaintiffs plausibly allege that the CarePoint Hospitals' billed charges reflect the usual,

customary, and reasonable rates for the particular medical services provided at the CarePoint Hospitals.  Am. Compl. ¶90.  And the plans attached to the Amended Complaint provide for reimbursement based on the provider's billed charges, the usual, customary, and reasonable rates, or an equivalent standard.  Specifically, the Plan attached as Exhibit E to the Amended Complaint states that where there is no contracted rate with an out-of-network provider, the "Eligible Expense" is determined "based on competitive fees in that geographic area."  *Id.*, Ex. E at 99. The Plans attached as Exhibits L and O of the Amended Complaint provide that the Subscriber is entitled to full coverage for Emergency Room treatment, other than a nominal co-pay which is waived if the patient is admitted to the hospital within 24 hours; and a percentage of the provider's billed charges for elective services.  *See id.*, Ex. L at Section XIV, 4 of 15 and Ex. O at 19 and 42, 109.  And the Plan attached as Exhibit P provides that, depending on level of coverage, a $100 copayment is required and, if the United Subscriber is admitted, the Plan covers 100% of the facility and physician costs, or 60% of the reasonable and customary charges for emergency treatment.  *Id.*, Ex. P at 21-25.  Both levels of coverage provide for coverage of 60% of reasonable and customary for elective treatment.  *Id.*  Thus, Plaintiffs sufficiently allege that all four Plans attached to the Amended Complaint provide for reimbursement based on the provider's billed charges, the reasonable and customary amount, or an equivalent standard, and that,

through their improper recoupment demands and improper recoupments, Defendants have failed to reimburse Plaintiffs as required under the Plans. Thus, Plaintiffs more than sufficiently plead their denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B).

### C.    Plaintiffs Plead Viable Breach of Fiduciary Duty Claims

Next, Defendants argue that Plaintiffs cannot bring their claim in Count II, for breach of fiduciary duty, allegedly because such a claim falls outside the scope of the pleaded assignments. (Motion at 22-23). Defendants rely, *inter alia*, *Premier Health Ctr., P.C. v. UnitedHealth Group*, 292 F.R.D. 204 (D.N.J. 2013), in which the Court declined to allow a healthcare provider to assert ERISA claims outside the logical scope of an assignment. *Id.* at 218-19. But unlike the assignments at issue in *Premier Health*, which were limited to the right to receive reimbursement for the care rendered, *see id.* at 219, the assignments at issue here broadly assign to Plaintiffs all "rights, benefits, privileges, protections, claims, causes of action, interests or recovery" arising out any Plan. Am. Compl. ¶¶51, 52. This scope logically encompasses fiduciary duty claims.

Defendants further contend that it is "problematic" to allow health care providers such as Plaintiffs to assert a fiduciary duty claims because they supposedly have "conflicting interests" with the Subscribers of the Plans. (Motion at 24-25). But the Third Circuit has not found the assignment of such claims to a

health care provider to be "problematic," having recognized that a health care provider with an assignment of benefits from the patient stands in the shoes of the beneficiary and may assert ERISA claims against plan fiduciaries. *Hahnemann University Hosp. v. All Shore, Inc.*, 514 F. 3d 300, 310 (3d Cir. 2008) ("Upon reviewing the record with respect to the circumstances surrounding the payment (or lack thereof) of benefits to Hahnemann, there is ample evidence to support the finding that Allshore, Inc. breached a fiduciary duty that it owed to Hahnemann as assignee of the patient in this case.") (citing 29 U.S.C. § 1104).

Finally, Defendants argue that Plaintiffs have not sufficiently alleged that Defendants are ERISA fiduciaries.  (Motion at 25-26).  But is settled that a party's "fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."  *Chao v. New Jersey Licensed Beverage Ass'n, Inc.*, 461 F. Supp. 2d 303, 308 (D.N.J. 2010) (quoting *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1030 (S.D. Ohio 2006)).  Thus, "rulings on this issue have tended to occur after discovery rather than at the pre-discovery motion to dismiss stage."  *Neurosurgical Assoc. of NJ, P.C. v. QualCare Inc.*, 2015 WL 4569792, at *2 (D.N.J. July 28, 2015); *see also In re Schering-Plough Corp. ERISA Litig.*, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants'

ERISA fiduciary status."). Here, Plaintiffs plead sufficient detail to support their contention that Defendants acted as ERISA fiduciaries under the Plan. Among other things, Plaintiffs allege that Defendants exercised discretion, authority, control and oversight in determining if plan benefits would be paid and the amounts of plan benefits that would be paid. Am. Compl. ¶¶93, 115. Defendants' administration of these claims resulted in the payment of 100% of each of the 423 claims at issue, and then, through their demand for repayment, resulted in 423 adverse benefit determinations totaling nearly $2 million. *Id.* At the pleading stage, these allegations more than suffice.

### D.   Plaintiffs Plead a Viable Claim under ERISA § 503

Finally, Defendants allege that Plaintiffs do not sufficiently plead their claim in Count III, alleging that Defendants violated ERISA Section 503. Defendants argue that this Count is deficient because Section 503 allegedly "is not enforceable against any entity other than an 'employee benefit plan'" and "does not provide for a standalone cause of action." (Motion at 27-28). Both arguments fail. Section 503 requires every employee benefit plan, *inter alia*, to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the *appropriate named fiduciary of the decision denying the claim*." 29 U.S.C. § 1133(2) (emphasis added). Thus, by its plain language, Section 503 recognizes the plan fiduciary's obligation to provide a full and fair

- 29 -

review. *Id.*; *see also Miller v. American Airlines, Inc.*, 632 F.3d 837, 850 (3d Cir. 2011) (noting Section 503's accompanying regulations "require a plan administrator to provide written notification of any adverse benefit determination" in conformity with 29 C.F.R. § 2560.503-1(g)(1)). Moreover, while it is true that Section 503 does not provide for a standalone cause of action, Plaintiffs may pursue a claim for appropriate equitable relief to redress Section 503 violations through the catchall remedial provision of Section 502(a)(3), 29 U.S.C. § 1132(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (noting that ERISA Sections 502(a)(3) and 502(a)(5) create "two 'catchalls,' providing 'appropriate equitable relief' for 'any' statutory violation"); *see also HUMC Opco LLC v. United Benefit Fund*, Civ. No. 16-168, 2016 WL 6634878, at *4 (D.N.J. Nov. 7, 2016) ("I do not read Count III as attempting to assert a right of action under ERISA § 503 as such. It does allege that § 503 is the source of the duty to provide full and fair review.... The actual claim, however, is asserted under the catchall civil enforcement provision, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). I cannot say at this stage that such a theory is precluded as a matter of law."). Here, Plaintiffs' claim in Count Three seeks equitable relief to remedy Defendants' violations of Section 503. (Am. Compl. ¶126, Prayer for Relief, ¶B). Under *Varity*, this is appropriate.

## IV.    Plaintiffs Sufficiently Plead State Law Claims[7]

### A.    Plaintiffs Sufficiently Plead Breach of Contract Claims

The CarePoint Hospitals sufficiently plead claims in Count Four of the Amended Complaint for breach of contract.  Defendants' main argument for dismissal of this count is that the Amended Complaint purportedly contains no factual allegations concerning any plan or plan provisions.  (Motion at 31).  To the contrary, as described in detail in Part III.B *supra*, the Amended Complaint alleges, *inter alia*, the Plans require United to reimburse the CarePoint Hospitals for their total billed charges, less applicable in-network patient responsibility, for emergency/urgent care that the CarePoint Hospitals provide to United Subscribers; the Plans required United to reimburse the CarePoint Hospitals for elective care provided to United Subscribers at the usual, customary and reasonable rates and that the United Subscriber is responsible for the balance; and that the Plans permit assignments of benefits.  *See* Am. Compl. ¶¶36, 38, 56-60.  These allegations sufficiently identify the Plan provisions that Defendants violated and, therefore, provide adequate support for the CarePoint Hospitals' claim for breach of contract.

---

[7] Defendants argue that ERISA would preempt Plaintiff's state law claims to the extent that they relate to ERISA plans, but the CarePoint Hospitals' state law claims are only pled in the alternative and are not directed to claims under ERISA plans. Fed. R. Civ. P. 8(d)(2) expressly authorizes a party to set out alternative statements of a claim.

**B.      Plaintiffs Sufficiently Pleads a State Law Claim for Breach of the Duty of Good Faith and Fair Dealing**

Next, Defendants allege that the CarePoint Hospitals have not sufficiently pled their state law claim in Count Five for breach of good faith and fair dealing. (Motion at 31).  This argument also fails.  In New Jersey, the covenant of good faith and fair dealing is implied in all contracts and mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997).  The guiding principle in the application of the breach of duty of good faith and fair dealing emanates from the fundamental notion that a party to a contract may not unreasonably frustrate its purpose.  *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002).  Here, Plaintiffs allege many ways in which Defendants breached their duty of good faith and fair dealing, including, but not limited to, paying all 423 claims at issue in full, long after the treatment has been provided and completed and hiring purported third-party claims "auditors" to manufacture false reasons for demanding that the CarePoint Hospitals reimburse Defendants for the treatment that the CarePoint Hospitals have provided to Defendants' subscribers.  (Am. Compl. ¶63).  Moreover, Defendants argue that the CarePoint Hospitals fail to plead facts to support any allegation that Defendants "undertook actions 'which will have the effect of destroying or inuring the right of [the plan participant] to receive the benefits of the contract' and 'that the defendant

acted with bad motive or intention.'" (Motion at 31). To the contrary, the Amended Complaint is replete with allegations demonstrating Defendants' deceptive practices and ill will toward Plaintiffs. (*See*, *e.g*., Am. Compl. ¶¶10-11, 14-16, 63-66, 68-77, 80-88, and 91-93). Thus, the CarePoint Hospitals sufficiently plead their claim for breach of the duty of good faith and fair dealing.

### C.   Plaintiffs' Plead a Viable State Law Claim for Breach of Fiduciary Duty

Defendants also contend that the CarePoint Hospitals do not plead a viable fiduciary duty claim in Count Six (Motion at 31-33), but this argument also fails. Under New Jersey law, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 150 N.J. 550, 563-64 (1997). The essence of a fiduciary relationship is that one party places trust and confidence in the other party, and the second party is in a dominant or superior position. *McKelvey v. Pierce*, 173 N.J. 26, 57 (2002).

Defendants argue that "CarePoint cannot identify the basis for any fiduciary duty to the patients." (Motion at 21). To the contrary, Plaintiffs allege, upon information and belief, that "Defendants were the plan administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Plans" (Am. Comp., ¶148) and that it "exercised discretion, authority, control and oversight in determining if Plan benefits would be paid and the amounts of Plan benefits that would be paid." (Am.

- 33 -

Compl. ¶115).   *See also* Am. Compl. ¶93.   Defendants further argue that the

CarePoint Hospitals fail to sufficiently allege a breach of the fiduciary relationship.

(Motion at 32).   To the contrary, the CarePoint Hospitals allege that Defendants

breached the fiduciary relationship in numerous ways, including, *inter alia*, when it

instructed CERiS to audit the claims at issue, demanded reimbursements for each

of the claims at issue, and adjudicated numerous appeals related to the 423 claims

at issue.   (Am. Compl. ¶¶10-11, 63-66, 68-77, 80-88, and 91-93 and 115).   Thus,

dismissal of this claim is also unwarranted.

### D.   Plaintiffs' Plead Viable a State Law Promissory Estoppel Claim

Nor is there any basis for dismissal of the CarePoint Hospitals' promissory

estoppel claim in Count Eight of the Amended Complaint, as Defendants argue.

(Motion at 34-35).   To establish such a claim, a Plaintiff must establish:  (1) a clear

and definite promise; (2) made with the expectation that the promisee would rely

upon it; (3) reasonable reliance; and (4) definite and substantial detriment. *Toll*

*Bros., Inc. v. Board of Chosen Freeholders of County of Burlington*, 194 N.J. 223,

253 (2008).   The Amended Complaint pleads such elements here.   Specifically, the

CarePoint Hospitals allege that Defendants represented to the CarePoint Hospitals

that the medical treatment sought by the United Subscribers as patients at the

CarePoint Hospitals were covered procedures under the Plans, and that the fees

associated with that treatment were covered charges under the Plans.   Plaintiffs

further allege that the CarePoint Hospitals reasonably understood that some payment would be forthcoming for the hospital services provided at the CarePoint Hospitals related to these procedures.   In addition, the CarePoint Hospitals provided emergency services to United Subscribers with the reasonable expectation that they would be reimbursed at 100% of billed charges above any patient responsibility as required by New Jersey law.  Moreover, the reliance was reasonable, in that Defendants' representations were made in the context of telephone calls from the CarePoint Hospitals' billing agents to verify, confirm, and pre-certify coverage prior to the hospital services being provided, and there was no ability for the CarePoint Hospitals to learn, separate and apart from Defendants' representations, whether Defendants considered the fees related to these hospital services to be covered charges under the relevant Plans.  The CarePoint Hospitals' reliance on payment for emergency services was also foreseeable as Defendants have been providing coverage in New Jersey to thousands of CarePoint Hospitals patients since July 2010.  Finally, the reliance has been to the CarePoint Hospitals' detriment, in that Defendants have demanded recoupments for $1,919,315.64 related to the 423 claims at issue and have wrongfully recouped $1,042,015.87 of that amount to date.  (Am. Compl. ¶¶13-14; 161-164).

Plaintiffs may also properly plead a promissory estoppel claim in the alternative to their breach of contract claim to the extent that the Plaintiffs may not

be recognized as the assignees and/or the contract claims are not cognizable.  *See Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, 2012 U.S. Dist. LEXIS 30466, *24-26 (D.N.J. Mar. 6, 2012) (holding that health care provider may plead promissory estoppel claim as an alternative to its claim as assignee of patients' plan benefits) (citing Fed. R. Civ. P. 8(d)(3)).  Defendants argue that the CarePoint Hospitals fail to sufficiently allege that Defendants made express promises regarding the amount of reimbursement it would provide in exchange for care rendered to particular United members and that the CarePoint Hospitals relied on such promises to their detriment.  (Motion at 34-35).  But that is exactly what the CarePoint Hospitals allege in the Amended Complaint.  (*See*, *e.g*., Am. Compl. ¶¶13-14; 161-164); *cf. Broad St.*, 2012 U.S. Dist. LEXIS 30466, *25.  Thus, Plaintiffs sufficiently state their promissory estoppel claim.

### E.   Plaintiffs Plead Viable Claims for Declaratory and Injunctive Relief

Moreover, Plaintiffs sufficiently plead their declaratory and injunctive relief claims in Counts Nine and Ten.  Defendants argue that Plaintiffs' declaratory judgment claim fails because the relief sought is available through its other causes of action.  (Motion at 36-38).  However, "simply because additional recovery would likely flow to [the plaintiff] as a result of a declaration in her favor does not preclude applicability of the [Declaratory Judgment Act ('DJA')]."  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 136-137 (3d Cir. 2014).  Importantly, "Courts

'may' grant declaratory judgments 'whether or not further relief is or could be sought.'" *Id.* (quoting 28 U.S.C. § 2201(a)).  Moreover, district courts have "unique and substantial discretion" in deciding whether to declare the rights of litigants, because "the district court is presented with facts during the litigation that indicate whether a declaratory judgment will be a useful remedy and whether the case is fit for resolution." *McGee v. Cont'l Tire N. Am., Inc.*, 2007 U.S. Dist. LEXIS 62869, *13 (D.N.J. Aug. 27, 2007).  Accordingly, dismissal of the CarePoint Hospitals' declaratory judgment claim at the early stages of this litigation, before the Court is presented with a developed factual record, would be premature.  *See id.* ("The Court concludes that dismissal of the declaratory judgment claim would be inappropriate at this early stage in the litigation.").

The CarePoint Hospitals also sufficiently pleaded that the Plans require United to reimburse the CarePoint Hospitals for their total billed charges, less applicable in-network patient responsibility, for emergency/urgent care that the CarePoint Hospitals provide to United Subscribers; the Plans required United to reimburse the CarePoint Hospitals for elective care provided to United Subscribers at the usual, customary and reasonable rates and that the United Subscriber is responsible for the balance (*see* Am. Compl. ¶¶36 and 38), as discussed in detail at Section III.B. *supra*.

For similar reasons, the Court should not dismiss Plaintiffs' claim for

injunctive relief at this time.  Plaintiffs seek injunctive relief in Count Nine as an ancillary remedy for its declaratory claim.  (Am. Compl. ¶¶165-168).  As the CarePoint Hospitals allege, "[a] monetary judgment in this case will only compensate the CarePoint Hospitals for past losses, and will not stop Defendants from continuing to confiscate the money earned by the CarePoint Hospitals and necessary to maintain its medical facility."  (*Id.*, ¶167).  Under these circumstances, dismissal of the CarePoint Hospitals' claim for injunctive relief in Count Nine would be premature and inappropriate.  *Cf. First Choice Fed. Credit Union v. Wendy's Co.*, 2017 U.S. Dist. LEXIS 20754, *16-17 (W.D. Pa. Feb. 13, 2017) ("As to the injunctive relief sought, Plaintiffs assert that they are seeking injunctive relief as an ancillary remedy under the Declaratory Judgment Act and that they do lack an adequate remedy at law…. At this early stage of this litigation and based on these allegations, the Court is not inclined to foreclose injunctive relief as a possible remedy").

### F.  Plaintiffs Adequately Plead Their New Jersey Consumer Fraud Act Claim

Finally, Defendants argue that the CarePoint Hospitals cannot plead a viable New Jersey Consumer Fraud Act ("NJCFA") claim in Count Eleven (Motion at 39-40), but this argument also fails.  The NCFCA provides in relevant part, that an unconscionable or deceptive practice in connection with the sale or advertisement of merchandise or subsequent performance of such person, whether or not any

person has in fact been mislead, deceived or damaged by such practices, amounts to an unlawful practice. *N.J.S.A.* 56:8–2. Defendants first argue that the CarePoint Hospitals cannot be consumers under the NJCFA because they are not valid assignees and have not suffered "ascertainable loss" as a result of a practice declared unlawful under the act. (Motion at 39-40). To the contrary, the CarePoint Hospitals had valid assignments for the 423 United Subscribers at issue. *See* Section II, s*upra*. The CarePoint Hospitals also specifically allege that the assignments signed by the United Subscribers assigned all rights, benefits and causes of action and claims owed to the United Subscribers from any plan of insurance. Am. Compl. ¶¶51-52. Accordingly, the CarePoint Hospitals may bring the NJCFA claim against Defendants as assignees of the United Subscribers.

The CarePoint Hospitals also sufficiently pleaded with particularity under Fed. R. Civ. P. 9(b), that as assignees of the consumer United Subscribers, they suffered an ascertainable loss. (Am. Compl. ¶¶3, 29-35, 38, 61-65, 182-185). Thus, Plaintiffs sufficiently state their NJCFA claim.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

Respectfully submitted,

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
Attorneys for Plaintiffs

By: /s/ Anthony P. La Rocco_____
     Anthony P. La Rocco

Dated:  June 6, 2017