# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IJKG, LLC, IJKG PROPCO LLC and IJKG OPCO LLC d/b/a CAREPOINT HEALTH—BAYONNE MEDICAL CENTER, HUDSON HOSPITAL OPCO LLC d/b/a CAREPOINT HEALTH— CHRIST HOSPITAL, and  HUMC OPCO LLC d/b/a CAREPOINT HEALTH—HOBOKEN UNIVERSITY MEDICAL CENTER, | : : : : : : : : : : : | Civil Action No. 16-8637 (CCC) (MF) |
| Plaintiffs, | : : | |
| v. | : : | |
| UNITED HEALTHCARE SERVICES, INC., OPTUMINSIGHT, INC., and UNITEDHEALTH GROUP, INC., | : : : : | **Motion Returnable: July 3, 2017**<br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. | : : | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, WITH PREJUDICE

Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN, P.A.
4 Headquarters Plaza
Morristown, N.J. 07962-1991
(973) 292-1700

Michelle S. Grant
Shannon L. Bjorklund
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 340-2600

*Attorneys for Defendants United Healthcare Services, Inc.,*
*OptumInsight, Inc., and UnitedHealth Group, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

I.   CAREPOINT LACKS STANDING FOR ALL CLAIMS BECAUSE
     THERE WAS NO VALID ASSIGNMENT ...................................................1

     A.   The Ambiguous and Contradictory "Assignment" Forms Fail to
          Validly Assign Any Rights ...................................................................2

     B.   The Purported Assignments by Patients 1 & 2 Are Ineffective
          Due to the Plans' Anti-Assignment Clauses .........................................4

     C.   CarePoint Lacks Standing for ERISA Claims Seeking Equitable
          Relief .....................................................................................................6

II.  CAREPOINT HAS NOT EXHAUSTED AVAILABLE ERISA
     REMEDIES ...................................................................................................7

III. CAREPOINT FAILS TO ADEQUATELY ALLEGE THAT ANY
     BENEFITS ARE DUE UNDER ANY RELEVANT PLAN .......................10

IV.  CAREPOINT FAILS TO STATE A CLAIM FOR RELIEF UNDER
     NEW JERSEY LAW ...................................................................................13

     A.   All Claims Are Preempted as to ERISA Plans, and Inadequately
          Pleaded as to Non-ERISA Plans .........................................................13

     B.   CarePoint's Claims for Declaratory and Injunctive Relief Fail.........13

     C.   CarePoint's Promissory Estoppel Claim Fails ....................................14

     D.   CarePoint's New Jersey Consumer Fraud Act Claim Fails ...............15

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Orthopedics & Sports v. BCBS of Mass.*,
   2015 U.S. Dist. LEXIS 93855 (D.N.J. July 20, 2015) ........................................4

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)........................................................................................13

*Aetna Health, Inc. v. Srinivasan*,
   2016 N.J. Super. Unpub. LEXIS 1515 (App. Div. June 29, 2016) ...................14

*Ark. BCBS v. St. Mary's Hosp., Inc.*,
   947 F.2d 1341 (8th Cir. 1991) ...........................................................................5

*BCBS of R.I. v. Korsen*,
   945 F. Supp. 2d 268 (D.R.I. 2013) .....................................................................9

*Bloomfield Surgical Ctr. v. Cigna Health & Life Ins. Co.*,
   2017 U.S. Dist. LEXIS 80895 (D.N.J. May 25, 2017)........................................3

*Briglia v. Horizon Healthcare Servs.*,
   2005 U.S. Dist. LEXIS 18708 (D.N.J. May 13, 2005)........................................4

*Cherene v. First Am. Fin. Corp. LTD Plan*,
   303 F. Supp. 2d 1030 (N.D. Cal. 2004)..............................................................9

*Cohen v. Indep. Blue Cross*,
   820 F. Supp. 2d 594 (D.N.J. 2011).....................................................................4

*In re Managed Care Litig.*,
   298 F. Supp. 2d 1259 (S.D. Fla. 2003).............................................................15

*Maniscalco v. TAC Ams. Comprehensive Healthcare Plan*,
   325 F. Supp. 2d 383 (S.D.N.Y. July 15, 2004)...................................................8

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008)...................................................................12

*MHA, LLC v. Aetna Health, Inc.*,
  2013 U.S. Dist. LEXIS 25743 (D.N.J. Feb. 25, 2013) ..........................................3

*Middlesex Surgery Ctr. v. Horizon*,
  2013 U.S. Dist. LEXIS 27278 (D.N.J. Feb. 27, 2013) .....................................2, 5

*Middlesex Surgery Ctr. v. Horizon*,
  2013 U.S. Dist. LEXIS 27542 (D.N.J. Feb. 28, 2013) ..........................................5

*New Jersey Brain & Spine Center v. Aetna, Inc.*,
  801 F.3d 369 (3d Cir. 2015) .............................................................................3, 5

*Peterson v. UnitedHealth Group Inc.*,
  2017 U.S. Dist. LEXIS 36730 (D. Minn. Mar. 14, 2017) ..................................13

*Premier Health Center v. UnitedHealth Group.*,
  2014 U.S. Dist. LEXIS 120589 (D.N.J. Aug. 28, 2014) ..................................8, 9

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
  292 F.R.D. 204 (D.N.J. 2013) ......................................................................6, 8, 9

*Rojas v. Cigna Health & Life Ins. Co.*,
  793 F.3d 253 (2d Cir. 2015) ................................................................................9

*St. Francis Reg'l Med. Ctr. v. BCBS of Ks., Inc.*,
  49 F.3d 1460 (10th Cir. 1995) .............................................................................5

*Tirgan v. Mega Life & Health Ins.*,
  700 A.2d 1239 (N.J. Super. Ct. Law Div. 1997) ..................................................2

*UNUM Life Ins. Co. v. Zaun*,
  2014 U.S. Dist. LEXIS 1004525 (D. Minn. May 29, 2014) ................................9

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) ................................................................................3

*Zarrilli v. John Hancock Life Ins. Co.*,
  231 F. App'x 122 (3d Cir. 2007) .......................................................................14

**Statutes**

29 U.S.C. § 502 ..........................................................................................3, 5, 6

29 U.S.C. § 1144(a) .......................................................................................13

N.J.S.A. § 26:2S-6.1(c) ...............................................................................4

**Other Authorities**

29 C.F.R. § 2560.503-1(m)(4)(i) ............................................................7, 8

Lena H. Sun, *50 Hospitals Charge Uninsured More Than 10 Times Cost of Care, Study Finds*, Wash. Post (June 8, 2015).......................................10

## **INTRODUCTION**

CarePoint's case has fatal flaws that undermine its claims pleaded under a dozen federal and state legal theories. CarePoint complains that United did not pay its full billed charges, apparently believing that the plans require United to pay whatever amount a provider such as CarePoint may choose to bill or that its billed charges can be assumed to be equivalent to the amount allowed under the plan. But the plans do not support this; they provide benefits based on a defined rate—the Eligible or Allowed Amount—based on comparative data from other providers in the relevant geographic region, or a pre-established markup of the Medicare rates. CarePoint does not adequately allege that it is entitled to benefits under any plan, which undermines the core aspects of its complaint.

And even before reaching this issue, CarePoint's claims fail for three fundamental reasons: (1) CarePoint lacks standing to bring any claims; (2) CarePoint has failed to exhaust its ERISA remedies, and the very facts pleaded by CarePoint demonstrate that appeal would not have been futile; and (3) CarePoint's state law claims are preempted by ERISA.

## **I.   CAREPOINT LACKS STANDING FOR ALL CLAIMS BECAUSE THERE WAS NO VALID ASSIGNMENT**

CarePoint's claims should be dismissed because it lacks standing as assignee to bring claims based on plan participants' rights and does not have any claims on its own behalf.

## A. The Ambiguous and Contradictory "Assignment" Forms Fail to Validly Assign Any Rights

First and foremost, CarePoint fails to plead it has received valid assignments of patients' rights to bring claims under ERISA or any other theory. A valid assignment must demonstrate the "intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee." *Middlesex Surgery Ctr. v. Horizon*, 2013 U.S. Dist. LEXIS 27278, at *8 (D.N.J. Feb. 27, 2013) (quote omitted). The right can only belong to one person; when a patient assigns a right to a provider, the patient no longer has that right. Thus, it is no surprise that the law requires that "[t]o be effective, the assignment must be clear and unequivocal." *Tirgan v. Mega Life & Health Ins*., 700 A.2d 1239, 1241 (N.J. Super. Ct. Law Div. 1997).

CarePoint fails to plead a "clear and unequivocal" transfer of a right, because the purported assignment is contradictory and therefore ambiguous. Specifically, CarePoint cites a clause that purports to designate CarePoint as both an assignee of its patients' rights (divesting the patient of the right), and as an authorized representative of its patients with respect to those very same rights (leaving the right with the patient). (Am. Compl. ¶¶ 51-54.) As discussed in United's opening brief, these terms are patently contradictory, do not express an unequivocal expression of intent to completely transfer participants' rights to CarePoint, and are therefore ineffective to assign *any* rights. (*See* Def. Br. at 9-11.)

2

The Third Circuit's decision in *New Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015), does not change this analysis, nor does it supersede any principle upon which United relies. In *New Jersey Brain & Spine*, the court considered whether a patient's assignment to a provider of the right to payment of insurance benefits, without a direct reference to the right to file suit, was sufficient to also assign the right to sue for that payment under § 502(a)(1)(B). *Id.* at 372. This holding—that a valid assignment of a right to payment also provides standing—is irrelevant to United's argument here that the assignments are invalid because they do not clearly assign *any* rights.[1]

*New Jersey Brain & Spine* did not address the argument United makes here: that a form purporting to designate a provider as both an assignee and authorized representative fails to clearly evidence an intent to assign a right. And the fact that the Third Circuit in *New Jersey Brain & Spine* did not *sua sponte* raise this argument, even though the plan provision might have supported such an argument,

---

[1]    United relied on *MHA, LLC v. Aetna Health, Inc.*, 2013 U.S. Dist. LEXIS 25743 (D.N.J. Feb. 25, 2013) for the unremarkable proposition that an assignment is effective only if it "clearly reflects the assignor's intent to transfer his rights." *Id.* at *7. This proposition was not disturbed by the Third Circuit's opinion in *New Jersey Brain & Spine* and remains good law. *See, e.g.*, *Bloomfield Surgical Ctr. v. Cigna Health & Life Ins. Co.*, 2017 U.S. Dist. LEXIS 80895, at *6 (D.N.J. May 25, 2017) (ERISA assignment); *see also Wallach v. Eaton Corp.*, 837 F.3d 356, 368 (3d Cir. 2016) (applying same rule to antitrust claims and quoting Restatement (Second) of Contracts § 324: "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person.").

does not somehow dictate the outcome here. CarePoint's purported assignments are invalid, because they do not clearly assign a right given CarePoint's dual designation as assignee and authorized representative. (*See* Def. Br. at 9-11.)

## B. The Purported Assignments by Patients 1 & 2 Are Ineffective Due to the Plans' Anti-Assignment Clauses

Second, certain plans contain anti-assignment clauses that render any purported assignments void, including those for Patient 1 and 2. Contrary to CarePoint's assertion, New Jersey law does not prohibit anti-assignment clauses in health plans, because the statute CarePoint relies upon "merely regulates the method of payment when an assignment . . . occurs," *i.e.*, by check. *Advanced Orthopedics & Sports v. BCBS of Mass.*, 2015 U.S. Dist. LEXIS 93855, at *12, 14 (D.N.J. July 20, 2015) (analyzing N.J.S.A. § 26:2S-6.1(c)). CarePoint fails to explain why the District of New Jersey's carefully-reasoned opinion in *Advanced Orthopedics* should be ignored, nor does CarePoint distinguish any of the decisions of this Court repeatedly recognizing the validity of an anti-assignment clause in an ERISA plan. (Def. Br. at 11-13, also citing *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 605 (D.N.J. 2011); *Briglia v. Horizon Healthcare Servs.*, 2005 U.S. Dist. LEXIS 18708, at *12-14 (D.N.J. May 13, 2005).)

Even assuming the New Jersey law did forbid anti-assignment provisions, which it does not, the statute is preempted as to any ERISA plan—and CarePoint has failed to adequately plead the existence of any non-ERISA plan. *See, e.g.*, *St.*

*Francis Reg'l Med. Ctr. v. BCBS of Ks., Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995) (state law forbidding anti-assignment clause preempted); *Ark. BCBS v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1346 (8th Cir. 1991).

Nor has CarePoint sufficiently pled that United waived enforcement of the anti-assignment clauses. United's "course of dealing" with CarePoint—communicating with and directing payment to providers—does not waive the anti-assignment provisions because such actions are consistent with CarePoint's role as an authorized representative and with plan provisions allowing direct payments to providers.[2] "Whether [CarePoint] had the right to submit a claim and pursue [an] appeal on [the patient's] behalf is a separate issue entirely from whether [CarePoint] has the right to sue under Section 502(a). In recognizing the former, [United] has not acquiesced in the latter." *Middlesex Surgery Ctr. v. Horizon*, 2013 U.S. Dist. LEXIS 27542, at *13 (D.N.J. Feb. 28, 2013).[3] Because CarePoint has

---

[2]     There is a critical distinction between *assignment of a right* to insurance benefits, which the Third Circuit in *New Jersey Brain & Spine* held also assigns the right to sue to recover those benefits, and *directing payment* to the provider, where the right and any cause of action remain with the patient although the payment is remitted to the provider.

[3]     CarePoint's attempt to distinguish *Middlesex* fails.  The *Middlesex* court considered whether the defendant "has waived, by its conduct, any defense that [plaintiff] lacks a valid assignment." *Id.* at *13. It is irrelevant whether the assignment was allegedly invalid due to an anti-assignment clause or some other reason.

not alleged valid assignments, it lacks standing to bring claims based on patients' rights, and the Court should dismiss the Amended Complaint.

## C. CarePoint Lacks Standing for ERISA Claims Seeking Equitable Relief

Even if the assignment clauses at issue assign the right to bring a Section 502(a)(1)(B) claim, they do not assign the right to seek declaratory or injunctive relief under other ERISA provisions. CarePoint does not address the established principal that an assignment *of an ERISA claim for benefits* does not assign causes of action seeking *equitable or injunctive relief* under ERISA absent clear and express language. Courts carefully scrutinize vague assignments that purportedly allow one provider—such as CarePoint—to usurp a patient's right to injunctive relief as to future medical claims for services by other providers or, even further, to equitable or injunctive relief that would apply to all plan participants. *See Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204, 218 (D.N.J. 2013) ("The notion that an assignment to a healthcare provider of the right to reimbursement for services rendered by that provider automatically gives the provider standing as a beneficiary to assert a full array of claims under the ERISA statute is a facile one.").

CarePoint fails to point to any language expressly assigning such rights, and the vague statements in the purported assignments, which—if they assign any

rights at all—assign at most only the claim for benefits. For this independent

reason, CarePoint lacks standing to bring Counts II and III.

## II. CAREPOINT HAS NOT EXHAUSTED AVAILABLE ERISA REMEDIES

As United explained in its opening brief, the initial audit finding

communications were part of the provider appeal process, which is separate from

the claims determination governed by ERISA. (Def. Br. at 15-16.) United provides

two opportunities for appeal: one by the provider, and one by the member. With its

motion to dismiss, United provided the adverse benefit determination ("ABD") for

Patient 1. CarePoint does not address this ABD, nor does it refute the fact that its

actions supposedly exhausting ERISA appeal rights occurred *before* the ABD was

issued. Instead, CarePoint argues that a notification of an audit finding sent by one

of United's auditors is itself an ABD, and therefore its actions predating the ABD

somehow exhausted its claims. This contention fails for two reasons.

First, the audit correspondence is not an ABD, which is described and

governed by ERISA regulations. Under the ERISA regulations, an "adverse benefit

determination" is "a denial, reduction, or termination of, or a failure to provide or

make payment (in whole or in part) for, a benefit…." 29 C.F.R. § 2560.503-

1(m)(4)(i). An ABD notifies a claimant that a claim has been processed, and must

contain certain ERISA notifications, including notice of the right to appeal. *Id.*

Exhibit F to the Amended Complaint—an exemplar "Audit Findings/Overpayment

Notification"—contains none of these things. It uses tentative language: "we identified payment discrepancies" and "[w]e request you review our findings." The letter provides three options for the provider: (1) if the provider agrees with the findings, it can sign the form and "UnitedHealthcare *will* adjust the claim . . . within 30 days from the date of your agreement"; (2) if the provider "disagree[s] with [the] findings," it can "indicate as such" and return the form to United for further consideration; and (3) if the provider does not respond, the "findings will be considered FINAL and claims *will be reprocessed.*" *Id.* (emphasis added).

By contrast, the ABD uses unequivocal language: "[t]his is to notify you that we processed your claim," "[t]his claim has been denied due to lack of medical necessity," and notifies Patient 1 of appeal rights under ERISA and the plan. (Def. Br. Ex. 1.) The audit letter lacks several qualities necessary to make it an ABD: it does not reflect a final decision, does not contain ERISA notices, and is not even directed to the member whose benefits it purportedly denies. *Cf. Maniscalco v. TAC Ams. Comprehensive Healthcare Plan*, 325 F. Supp. 2d 383, 389 (S.D.N.Y. July 15, 2004) (finding email was an ABD when it used definitive language referencing a "processed claim" and describing ERISA appeal rights).

The court's dicta in *Premier Health Center v. UnitedHealth Group*., 2014 U.S. Dist. LEXIS 120589 (D.N.J. Aug. 28, 2014), *vacated on other grounds by* 2014 U.S. Dist. LEXIS 172740 (D.N.J. Dec. 15, 2014), do not require a different

result. In ruling on class certification, the *Premier* court suggested that overpayment identification and refund requests are ABDs even when the original payment was predicated on fraud or mistake,[4] but the court did not rule on the ultimate question of which communication constitutes an ABD, *i.e.*, the initial letter tentatively identifying issues revealed through an audit (Am. Compl. Ex. F) versus a formal explanation of benefits sent later (Def. Mtn. Ex. 1). None of the other cases cited by CarePoint hold that audit letters such as Exhibit F are ABDs.[5]

Second, the facts pleaded by CarePoint demonstrate that exhaustion would *not* be futile; CarePoint prevailed on some provider appeals. (*See* Am. Compl. ¶ 13.) This fact alone undermines CarePoint's argument that exhaustion is futile.

---

[4]     The *Premier* dicta are inconsistent with other authority specifically on this point. *See, e.g.*, *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 n.7 (2d Cir. 2015) (criticizing *Premier* for "us[ing] the term 'benefit' loosely" because "[w]hile correct from the dictionary's perspective, use of 'benefit' to include payment in this context [due to fraud or billing errors] does not fit with ERISA's greater . . . scheme").  Moreover, the *Premier* court expressly noted that courts could come to different conclusions on this point in "identical" cases. 2014 U.S. Dist. LEXIS 120589, at *86-87.

[5]     *See UNUM Life Ins. Co. v. Zaun*, 2014 U.S. Dist. LEXIS 100425, at *6-8, *10 (D. Minn. May 29, 2014) (letter informed participant that claim was being closed, "[t]he decision/reason," appeal rights, and separate overpayment section); *BCBS of R.I. v. Korsen*, 945 F. Supp. 2d 268, 282-83 (D.R.I. 2013) (refusing to award equitable relief to plan in an in-network provider dispute and, in dicta, comparing administrator's review process to "procedures specified by ERISA *and included in their own Providers Agreements*") (emphasis added); *Cherene v. First Am. Fin. Corp. LTD Plan*, 303 F. Supp. 2d 1030, 1036 (N.D. Cal. 2004) (letter contained final language, stating "[w]e *have completed* our review and . . . *have adjusted* our prior recalculations") (emphasis added).

## III.   CAREPOINT FAILS TO ADEQUATELY ALLEGE THAT ANY BENEFITS ARE DUE UNDER ANY RELEVANT PLAN

CarePoint's Amended Complaint and opposition brief share one fundamental flaw: CarePoint apparently assumes that it is entitled to 100% *of its billed charges* under the relevant plans, but the plans describe coverage based on an "Allowed" or "Eligible" amount, which may very well differ from a provider's billed charge. Indeed, it should come as no surprise that a full payment under a plan may not match CarePoint's billed charge, particularly when independent sources confirm that CarePoint's billed charges sometimes dramatically exceed the charges of other hospitals in the region, up to "12.6 times the actual cost of patient care."[6] For this motion, this Court does not need to decide whether CarePoint hospitals are overcharging their patients. Rather, the question is whether CarePoint has adequately alleged that it is due any benefits under the plan. It has not.

First, CarePoint does not allege with any degree of specificity that the services provided are covered under the applicable plan. Vague assertions that all services were appropriate and covered do not suffice, particularly when they are implausible based on the specific facts pleaded. (*See* Def. Br. at 19 (patient with 9-day "emergency care" has plan providing reduced coverage if patient remains in non-network hospital after it would be "medically appropriate to transfer").)

---

[6]      *See* Lena H. Sun, *50 Hospitals Charge Uninsured More Than 10 Times Cost of Care, Study Finds*, Wash. Post (June 8, 2015), https://goo.gl/F4Bvla.

Second, CarePoint does not adequately allege that *any* plan provides benefits at the full billed charges, as opposed to a percentage of "Allowed Expenses," "Eligible Expenses" or the "Usual and Customary Rate."[7] In fact, all four plans attached to the Amended Complaint specifically advise patients that they do ***not*** reimburse based on an out-of-network provider's billed rates.[8]

Finally, CarePoint does not allege that it is entitled to any payment over and above what it has already received. CarePoint does not allege that United paid less than the respective plan required. CarePoint does not and cannot create an ERISA claim by pretending that its billed amount is always equivalent to the "Allowed Amount," "Eligible Expenses" or the "Usual and Customary Rate." This Court has explained the difference between a "billed charge" and the "usual and customary rate" as follows: "[The] plan contracts do not cover an entire fee charged by an

---

[7]     CarePoint's argument that "all four Plans attached to the Amended Complaint provide for reimbursement based on the provider's billed charges, the reasonable and customary amount, or an equivalent standard," (Pl. Br. at 26), is misleading. All four plans define benefits in terms of Eligible or Allowed Expenses. (Def. Br. at 21.) One plan defines Allowed Amounts for facilities as "140% of the Medicare amount" or, if none, "50% of the Facility's charge." Ex. L, Rider 9.13 at 3 (ECF page 117) (emphasis added).  Although this amount is technically "based on" the provider's charges—*i.e.*, calculated from them—the plan does not provide for coverage at the full billed rate, as CarePoint implies.

[8]     *See* Ex. L at 4 ("Our Allowed Amount is not based on UCR and the Non-Participating Provider's actual charge may exceed Our Allowed Amount."); Ex. E at 92 (plan does not cover costs that exceed "Eligible Expenses"); Ex. P at 9 ("You are [] responsible for any provider charges that exceed the reasonable and customary charges…."); Ex. O at 11 ("You are required to pay the amount that exceeds the Eligible Expense" [for an out-of-network provider].").

out-of-network provider. Rather, [the health plan] pays a percentage of a certain allowed charge. . . .  [The allowed charge] is most often defined as the Usual, Customary, and Reasonable charge for the service provided." *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 450-51 (D.N.J. 2008) (quote omitted).

As to the emergency claims, CarePoint alleges that United did not pay the full billed amount but does not cite any plan term requiring payment of the full billed charges. As to the elective care claims, CarePoint alleges that the fees it charges are "the usual, customary, and reasonable rates for the particular medical services provided at the CarePoint Hospitals." (Am. Compl. ¶ 90.) As United noted in its opening brief, the question is not whether the charges are the typical billed rate for CarePoint; the question is whether they reflect usual, customary and reasonable ("UCR") rates for providers in that region. And even if this allegation is intended to mean that CarePoint's billed rate for every single one of the 423 claims at issue is identical to what United would determine as the UCR, CarePoint does not allege that United paid less than the allowed percentage for those claims.

The Amended Complaint lays out the crux of CarePoint's grievance: it objects to the timing of United's attempt to recover overpayments. (*See* Am. Compl. ¶ 91 ("demanding recoupment without any discernable basis, *falls far short of the usual, customary, and reasonable reimbursement rates* required under the Plans").) The timing of the audit does not affect whether a specific amount is

covered under the plan. Nor does the mechanism for recoupment affect whether a specific charge is covered.[9] CarePoint fails to state a claim.

## IV. **CAREPOINT FAILS TO STATE A CLAIM FOR RELIEF UNDER NEW JERSEY LAW**

### A. All Claims Are Preempted as to ERISA Plans, and Inadequately Pleaded as to Non-ERISA Plans

CarePoint's state law claims fail because they are completely and expressly preempted as to any ERISA plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (complete preemption); 29 U.S.C. § 1144(a) (express preemption). Moreover, while CarePoint argues that its state law claims "are only pled in the alternative and are not directed to claims under ERISA plans," (Pl. Br. at 31 n.7), these alternatively-pleaded state law claims must be dismissed because CarePoint fails to allege the existence of any non-ERISA plans supporting such claims.

### B. CarePoint's Claims for Declaratory and Injunctive Relief Fail

CarePoint's claims for declaratory and injunctive relief (Counts IX and X) rely solely on the ERISA plans and fail to allege an independent substantive basis

---

[9]   Although CarePoint's complaint is entirely devoid of *any* allegation of cross-plan recoupment, CarePoint cites a recent District of Minnesota case determining whether that cross-plan recoupment was permissible under the specific plans at issue in that case. Because cross-plan recoupment is neither raised in the complaint, nor relevant to this motion to dismiss, United does not address it here. In any event, the Minnesota judge expressed doubt in the ruling, and certified the issue for interlocutory appeal, for the first time in the judge's 11-year tenure on the bench.  *See Peterson v. UnitedHealth Group Inc.*, 2017 U.S. Dist. LEXIS 36730, at * 39-40 (D. Minn. Mar. 14, 2017).

for relief, state-law based or otherwise. Notably, CarePoint retreats from its reliance on *Aetna Health, Inc. v. Srinivasan*, 2016 N.J. Super. Unpub. LEXIS 1515 (App. Div. June 29, 2016), as a basis for substantive relief, citing instead United's supposed obligation to "reimburse CarePoint Hospitals for their total billed charges" under the plans. (Pl. Br. at 37.) As discussed above and in United's opening brief, these allegations do not state a claim for relief under ERISA and cannot serve as a substantive basis for a declaratory judgment claim. Similarly, CarePoint has failed to state a claim for injunctive relief as it cannot demonstrate *any* likelihood of success on the merits of its ERISA claims.

### C. CarePoint's Promissory Estoppel Claim Fails

CarePoint's claim for promissory estoppel (Count VIII) fails for several reasons. First, CarePoint does not adequately allege a "clear and definite promise" upon which it relied. *Zarrilli v. John Hancock Life Ins. Co.*, 231 F. App'x 122, 124 (3d Cir. 2007) (quote omitted). CarePoint alleges only that United "represented . . . that the medical treatment sought by Patients . . . was a covered procedure under the Plans." (Am. Compl. ¶ 162.) This allegation falls far short of a "clear and definite promise" to pay any specific amount, such as the full amount CarePoint later decided to bill United, which was unknown at the time of the alleged call. Moreover, CarePoint fails to allege any detrimental reliance based on United's representations that procedures were covered. As CarePoint stresses, it was

required to provide medically necessary emergency services under New Jersey law, (*id.* ¶¶ 39-41), and therefore any alleged representations by United could not cause CarePoint to take action that it was already legally obligated to take, *i.e.*, treat patients with emergent conditions. As for elective services provided, CarePoint has failed to adequately allege any detrimental reliance or harm, because even CarePoint could bill its patients for any unpaid amount. (*Id.* ¶ 38.)

### D. CarePoint's New Jersey Consumer Fraud Act Claim Fails

CarePoint's claim for relief under the New Jersey Consumer Fraud Act (Count XI) also fails. First, CarePoint lacks standing "as assignee[]," because fraud claims do not fall within the scope of the plans' purported assignments. Second, the New Jersey Fraud Act does not apply to CarePoint as "[p]rovider [p]laintiffs cannot be considered 'consumers' by any interpretive stretch of the New Jersey Act." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1303-04 (S.D. Fla. 2003). Third, CarePoint asserts only vague allegations that United "represent[ed] that the plans provided coverage for out-of-network medically necessary treatment," and later "conceal[ed]" its practice of auditing the claims. (Am. Compl. ¶¶ 184-85.) These allegations fail to meet the heightened Rule 9(b) standard.

## <u>CONCLUSION</u>

For all of these reasons, the Court should grant United's motion to dismiss the Amended Complaint with prejudice.

Dated: June 23, 2017

*s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
Kathleen N. Fennelly
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone: (973) 292-1700
Facsimile: (973) 292-1767

*~ and ~*

Michelle S. Grant
Shannon L. Bjorklund
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Defendants United*
*Healthcare Services, Inc., OptumInsight,*
*Inc., and UnitedHealth Group, Inc.*